CONTINENTAL CASUALTY COMPANY, Plaintiff,

v.

Woodson WALKER, Walker & Dunklin, and as an interested party, Jo Ann Williams, Defendants.

No. 4:07cv00298 SWW.

United States District Court, E.D. Arkansas, Western Division.

July 7, 2008.

Jim L. Julian, Chisenhall, Nestrud & Julian, P.A., Little Rock, AR, Richard A. Simpson, Wiley Rein LLP, Teah R. Lupton, Ross, Dixon & Bell, L.L.P., Washington, DC, for Plaintiff.

Joyce Raynor Carr, J. Raynor Carr & Associates, Houston, TX, for Defendants.

### MEMORANDUM AND ORDER

SUSAN WEBBER WRIGHT, District Judge.

Continental Casualty Company ("Continental") brings this action against attorney Woodson Walker ("Walker"), the law firm of Walker & Dunklin (the "Firm"), and interested Party Jo Ann Williams ("Williams") seeking a judicial declaration that it has no duty to defend or indemnify Walker or the Firm in connection with a legal malpractice claim asserted by Williams against Walker and the Firm. The matter is before the Court on motion of Continental for summary judgment [doc. # 17]. Williams has responded in opposition to Continental's motion and Continental has filed a reply to Williams' response.[1] Having considered the matter, the Court grants Continental's motion for summary judgment.

### I.

On March 15, 1997, Williams underwent surgery after suffering multiple serious injuries in an automobile accident.[2] Nearly six years later, on February 26, 2003, Williams underwent a second surgery for a hysterectomy. During the course of that surgery, it was discovered that the surgeon performing the 1997 surgery left surgical gauze in Williams' stomach. As a consequence, Williams underwent extensive surgery to remove several adhesions and scar tissue to her small intestines, abdomen walls, and bowels as a result of the surgical gauze left in her body.

Having discovered that a foreign object was left in her body, Williams had one year from the date of the discovery, February 26, 2003, in which to file a medical malpractice action. See Ark.Code Ann. § 16–114–203(b). Desiring to file a medical malpractice action against the hospital and doctor who performed her 1997 surgery, Williams, on March 10, 2003, retained Walker to represent her. Shortly thereafter, on April 21, 2003, Walker was suspended from the practice of law by the Arkansas Supreme Court Committee on Professional Conduct. Walker failed to file a medical malpractice action on behalf of Williams within the applicable statute of limitations and she is now barred from asserting any medical malpractice claim against the hospital and doctor who performed her 1997 surgery.

Upon retaining Walker, Williams states she contacted Walker's office every 3–4 months to check on the status of her case. She states that in March 2005, after numerous unreturned telephone calls and false, dishonest and misleading statements by Walker's former secretary, Jackie Pennington ("Pennington"), she and her mother visited Walker's Little Rock office. Williams states she spoke to Walker's law

---

1. Neither Walker nor the Firm has filed an answer to Continental's complaint and, consequently, neither has filed a response to Continental's motion for summary judgment.

2. The Court has viewed and set forth the facts in the light most favorable to Williams.

partner, Larry Dunklin ("Dunklin"), who failed to inform her that Walker had been suspended from the practice of law but instead gave her additional false, dishonest and misleading information.

Williams states she did not discover Walker's failure to file her medical malpractice claim until September 2005, nor did she know that Walker had been suspended from the practice of law. Upon learning this information, Williams retained attorney Joyce Raynor Carr and, on October 17, 2005, filed the underling legal malpractice action against Walker and the Firm, styled *Jo Ann Williams v. Woodson Walker, et al.*, No.2005–CV–238–2, in the Circuit Court of Ouachita County, Arkansas.

In a letter from Walker to Carr dated December 1, 2005, Walker referenced an agreement between himself and Carr to extend the time for an answer to the complaint to December 14, 2005, in order to allow Walker time to tender the matter to his insurance carrier, Continental. Walker stated to Carr that he would provide Continental a copy of the complaint in the underlying action and his response.

Continental first issued Lawyers' Professional Liability Policy No. LAW–169690408 (the "Policy") to the Firm for the claims made and reported policy period of April 27, 2000, to April 27, 2001. This Policy was renewed annually, with each successive policy also being written on a claims made and reported basis.

The last policy issued by Continental to the Firm was effective for the claims made and reported policy period of April 27, 2004, to April 27, 2005. Concerning the scope of available coverage, the Policy provides in pertinent part as follows:

I. INSURING AGREEMENT

  A. Coverage

    The **Company** agrees to pay on behalf of the **Insured** all sums in excess of the deductible that the **In-** **sured** shall become legally obligated to pay as **damages** and **claim expenses** because of a **claim** that is both first made against the **Insured** and reported in writing to the **Company** during the **policy period** by reason of an act or omission in the performance of **legal services** by the **Insured** or by any person for whom the **Insured** is legally liable. . . .

Policy, § I.A (emphasis in original).

By letter dated January 19, 2005, Continental informed the Firm that the Policy would not be renewed upon its expiration on April 27, 2005, because of "Unfavorable Underwriting Factors." In its letter, Continental reminded the Firm that the Policy contained an automatic 60–day extended reporting period, which provides as follows:

VI. EXTENDED REPORTING PERIODS

  As used herein, "**extended reporting period**" means the period of time after the end of the **policy period** for reporting claims by reason of an act or omission that occurred prior to the end of the **policy period** and is otherwise covered by this policy.

  A. Automatic extended reporting period

    If this policy is canceled or nonrenewed by either the **Company** or by the **Named Insured**, the **Company** will provide to the **Named Insured** an automatic, non-cancelable **extended reporting period** starting at the termination of the **policy period** if the **Named Insured** has not obtained another policy of lawyers professional liability insurance within sixty (60) days of the termination of this Policy. This automatic **extended reporting peri-**

**od** will terminate after sixty (60) days.

Policy, § VI.A. (emphasis in original).

In addition to stating in its January 19, 2005, letter that the Policy would not be renewed upon its expiration and that the Policy contained an automatic 60–day extended reporting period, Continental also informed the Firm in its letter that the Firm had the option of purchasing an optional extended reporting period which, if purchased, would extend the time in which to report claims from legal services rendered prior to the expiration/termination date of its last policy. However, by letter dated May 11, 2005, Continental advised the Firm that it was ineligible to purchase an extended reporting period beyond the automatic 60–day extended reporting period, stating that due to the Firm's not reimbursing Continental for certain deductibles owed for several claims (which it considered non-payment of premiums), it was rescinding the offer.

Having received Walker's December 1, 2005, letter to Carr along with a copy of the complaint in the underlying action, Continental, by Letter dated December 12, 2005, informed Walker that it was declining coverage for the underlying action because it did not constitute a claim either first made or reported to Continental during the applicable policy period or automatic 60–day extended reporting period. Walker and the Firm apparently never responded to Continental's letter declining coverage.

By letter dated December 27, 2005, Carr provided Continental a copy of the complaint against its insured in the underlying action and inquired if Continental would be representing Walker. By letter dated January 11, 2006, Continental advised

Carr that it would not be representing Walker in the claim by Williams.[3]

By letter to Continental dated February 26, 2007, Carr demanded settlement of the applicable policy limits, stating that Williams' claim was within the scope of coverage and that her demand was within the policy limits. Carr stated that if no settlement was effectuated, she would amend Williams' lawsuit and proceed to trial. Continental subsequently filed this action asserting it has no duty to defend or indemnify Walker or the Firm with respect to the underlying action.

## II.

Continental argues it has no duty to defend or indemnify Walker or the Firm with respect to the underlying action because the underlying action does not constitute a claim both first made and reported to Continental during the Policy Period or during the Policy's automatic 60–day extended reporting period as is required to trigger coverage under the Policy. Continental argues there are no genuine issues of material fact with respect to these issues and that it is entitled to summary judgment as a matter of law.

## A.

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). As a prerequisite to summary judgment, a moving party must demonstrate "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325,

---

**3.** Although the January 11th letter is dated 2005, this apparently is a typo and should be dated January 11, 2006, as the letter is in response to Carr's letter dated December 27, 2005.

106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has properly supported its motion for summary judgment, the nonmoving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The nonmoving party may not rest on mere allegations or denials of his pleading, but must "come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Id.* at 587, 106 S.Ct. 1348 (quoting Fed.R.Civ.P. 56(e) and adding emphasis). *See also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348 (citations omitted). However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.* (citation omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

### B.

The Policy at issue is a claims made and reported policy that applies only to those claims that are both first made against the insured and reported in writing to Continental during the policy period. Policy Declaration at 1. Under Arkansas law, a "claims made and reported policy" can only be triggered if the claim is made in writing and given to the insurer during the policy period. *Campbell & Co. v. Utica Mut. Ins. Co.,* 36 Ark.App. 143, 146, 820 S.W.2d 284 (1991). *See also Continental Cas. Co. v. Jewell, Moser, Fletcher &* *Holleman,* 2005 WL 1925964, at *2 (E.D.Ark.2005). The giving of notice under such a policy containing materially identical language to that used in the Policy at issue in this action is a condition precedent to coverage under the policy. *AIG Centennial Ins. Co. v. Fraley–Landers,* 450 F.3d 761, 765 (8th Cir.2006).

It is undisputed that Williams did not make a claim against Walker or the Firm until October 17, 2005, nearly six months after the policy period had expired and more than three months after the 60–day extended reporting period had expired, and it is undisputed that Williams' claim was not reported to Continental until December 1, 2005, more than five months after the 60–day extended reporting period. Accordingly, the Policy does not provide coverage for the underlying action because that action does not constitute a claim first made against an insured and reported in writing to Continental during the policy period or 60–day extended reporting period. *Cf. Kimbrell v. Union Standard Ins. Co.,* 207 F.3d 535, 537 (8th Cir.2000) (insured's failure to send his insurer papers regarding a lawsuit that had been filed against him violated a condition precedent of the policy).

Williams, however, argues (without the aid of Walker and the Firm, who apparently do not object to Continental's declination of coverage) that Walker is an "innocent insured" under the Policy in that he failed to tender a claim to Continental for coverage because of the alleged misrepresentations of Pennington and Dunklin. This argument must fail as the Policy's "innocent insured" provision applies only whenever coverage under the Policy "would be excluded, suspended or lost because of any exclusion relating to criminal, dishonest, fraudulent, or malicious conduct by any person insured" under the policy and an insured seeking coverage "did not

personally participate or personally acquiesce in or remain passive (including failure to give timely notice) after having knowledge of such conduct." Policy, § V.B. Here, Continental has not invoked any exclusion relating to "the criminal, dishonest, fraudulent or malicious" conduct of any insured as a basis for denying coverage of the underlying action but claims only that the underlying action does not constitute a claim both first made and reported to Continental during the policy period and 60–day extended reporting period. Moreover, it is difficult to portray Walker as an "innocent insured" who was somehow duped by the alleged misrepresentations of Pennington and Dunklin given that Walker, by Williams' own admission, accepted her case, was suspended from the practice of law a month later, never told Williams about the suspension, and failed to file her medical malpractice lawsuit within the applicable statute of limitations.

Williams also argues the Policy's Prior Acts clause creates coverage for any claim first made against an insured at any point after April 27, 2000. This argument is misplaced, however as the Policy's Prior Acts clause applies to "act[s] or omission[s]" provided that "the act or omission occurred on or after April 27, 2000," Policy, § I.A.5, and clearly does not eliminate the requirement that a claim be made against an insured and reported to Continental during the policy period in order for coverage to apply. Rather, the Prior Acts clause creates an additional requirement for coverage in that a claim will only be covered, subject to the Policy's other terms and conditions, if the claim is first made against an insured during the policy period, first reported to the insurer during the policy period, and based on acts or omissions taking place on or after the prior acts date of April 27, 2000.

Finally, Williams argues the Firm failed to provide complete information in its application for the 2003–2004 Policy issued by Continental to the Firm and that Continental has waived its right to rely on the incompleteness of the 2003 application as a basis for denying coverage for the underlying action. Continental, however, is not by this action seeking to rescind the Policy and is not raising the Firm's alleged misrepresentations in its insurance applications as a basis for denying coverage for the underlying action. Rather, Continental's complaint and summary judgment papers are based solely on the Policy's claims made and reported requirements. Accordingly, any incompleteness of the 2003 application is irrelevant to the issues in this action. In any case, Williams has not identified any conduct on the part of Continental that even arguably constitutes relinquishment of a known right that would constitute a waiver of the Policy's requirements. *Kimbrell*, 207 F.3d at 538. *See also McAninch v. Wintermute*, 491 F.3d 759, 773 (8th Cir.2007) (under Arkansas law, an insurer waives the defense of non-coverage only when the insurer's conduct misleads the insured into believing that coverage exists and the insured takes action in reliance on that misrepresentation; doctrine of waiver or estoppel cannot be given the effect of enlarging or extending coverage as defined in contract, nor can it create a contract of insurance, since a cause of action cannot be based on a waiver).

In sum, the Policy does not provide coverage for the underlying action because that action does not constitute a claim first made against an insured and reported in writing to Continental during the policy period or 60–day extended reporting period. Accordingly, Continental has no duty to defend or indemnify Walker or the Firm in connection with the underling legal mal-

practice action, *Jo Ann Williams v. Woodson Walker, et al.*, No.2005–CV–238–2.

## III.

For the foregoing reasons, the Court grants Continental's motion for summary judgment. The Court will enter Judgment accordingly.

IT IS SO ORDERED.

### *JUDGMENT*

Pursuant to the Memorandum and Order entered in this matter on this date, it is Considered, Ordered, and Adjudged that the motion of Continental Casualty Company for summary judgment in its action seeking a judicial declaration that it has no duty to defend or indemnify Woodson Walker or the Law Firm of Walker & Dunklin in connection with a legal malpractice claim asserted against Walker and the Firm by Jo Ann Williams in *Jo Ann Williams v. Woodson Walker, et al.*, No.2005–CV–238–2 (Ouachita County Cir. Ct.), be and it hereby is granted.