# United States Court of Appeals

### For the Eighth Circuit

_____

No. 18-2984

_____

Paul T. Russell, Jr.; J. Carson Cates

*Plaintiffs - Appellants*

v.

Liberty Insurance Underwriters, Inc.

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: November 14, 2019
Filed: February 19, 2020

_____

Before SHEPHERD, GRASZ, and KOBES, Circuit Judges.

_____

GRASZ, Circuit Judge.

After Liberty Insurance Underwriters, Inc. removed this case to federal court, Plaintiffs Paul T. Russell, Jr., and J. Carson Cates moved to remand. The district

court[1] denied the motion. It later granted Liberty's motion for summary judgment. We affirm both decisions.

## I. Background

### A. Factual History

Paul Russell co-owned Cates Sheet Metal Industries, Inc., with Daniel and J. Carson Cates.[2] Daniel's 2003 cancer diagnosis prompted the three shareholders to create a succession plan. The company would purchase life insurance policies on each shareholder. If a shareholder died, the company would use the insurance proceeds to buy the deceased shareholder's stock from his personal representative. This plan was memorialized in two documents, which we will call the "Stock Agreement."

Daniel died on September 20, 2013. The company received the life insurance proceeds and deposited the money into its bank account. But Daniel's shares, held by the Daniel J. Cates Revocable Trust, were never purchased. Elizabeth Cates — Daniel's widow, beneficiary, and personal representative — was never paid.

Elizabeth sued Russell and J. Carson for conversion and breach of fiduciary duty in Kansas state court. The court ultimately found that Russell, as company president, had breached his fiduciary duty. The court issued a judgment against Russell for $822,900.77 plus interest.

---

[1]The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri.

[2]Because Daniel, J. Carson, and Elizabeth Cates share a surname, we refer to them by their given names.

Russell and J. Carson had expected Liberty, their insurer, to defend and indemnify them in the lawsuit. They had an insurance policy providing coverage for liabilities related to their company duties. The policy provided three types of coverage, two of which are relevant here: Directors, Officers and Company Liability Coverage ("Directors & Officers Coverage"), and Fiduciary Liability Coverage ("Fiduciary Coverage"). The policy purported to protect Russell and J. Carson from business-related civil judgments and defense costs.

But Liberty refused to defend and indemnify them when Elizabeth sued. It pointed to policy provisions allegedly excluding Russell and J. Carson's conduct from coverage. First, Liberty noted that both the Fiduciary and Directors & Officers Coverage contained a "Personal Profit Exclusion." In short, the policy would not cover corporate officers from claims "based upon, arising out of, or attributable to . . . gaining in fact any profit, remuneration or financial advantage" to which they are "not legally entitled." Because the life insurance proceeds eventually paid Russell and J. Carson's salaries, Liberty argued, Russell and J. Carson enjoyed financial advantages to which they were not entitled. Under Liberty's reading of the policy, Russell and J. Carson's liability and defense costs were not covered.

Second, Liberty noted that the Directors & Officers Coverage contained a "Contract Exclusion." According to the policy, Liberty has no duty to defend or indemnify corporate officers against claims "[b]ased upon, arising out of, or attributable to any actual or alleged liability under or breach of any contract or agreement." Elizabeth's lawsuit alleged that Russell and J. Carson promised her, but never delivered, Daniel's life insurance proceeds. Because her claim was based on this breach of contract, Liberty maintained, Russell and J. Carson should not expect the Directors & Officers Coverage to help them.

## B. Procedural History

Russell and J. Carson sued Liberty in Missouri state court for bad-faith failure to defend and indemnify. Elizabeth, as the Daniel J. Cates Revocable Trust, also joined; she hoped to recover from Liberty the money she was owed from the earlier lawsuit.

Liberty, a corporate citizen of Massachusetts and Illinois, removed the case to federal court. None of the plaintiffs were Massachusetts or Illinois citizens: Russell was a Missourian, J. Carson a Kansan, and the Trust (subsequent jurisdictional discovery would show) enjoyed Arizona and Missouri citizenship. Diversity jurisdiction seemed proper under 28 U.S.C. § 1332.

But Russell and J. Carson wanted the case back in state court, where they originally filed their complaint. They explained why remand was necessary: in "direct action[s]" against insurers, the insurer takes the citizenship of those it insures. 28 U.S.C. § 1332(c)(1). And if the Trust's equitable garnishment claim against Liberty is a direct action, then Liberty shares Russell's Missouri citizenship. Accordingly, complete diversity cannot exist because Missouri citizens are both plaintiffs and defendants.

To determine whether the Trust's equitable garnishment claim against Liberty was a "direct action," the district court examined the claim's statutory basis: section 379.200 of the Missouri Revised Statutes. "Upon the recovery of a final judgment against any [insured] person, firm or corporation," the statute says, "the judgment creditor may proceed in equity against the defendant and the [defendant's] insurance company to reach and apply the insurance money to the satisfaction of the judgment." Mo. Rev. Stat. § 379.200.

The district court never resolved the direct-action question because section 379.200's language presented a more pressing problem. According to the statute, if the Trust wanted Liberty to satisfy its judgment against Russell, it had to sue both Russell and Liberty. In short, the Trust's equitable garnishment claim seemingly required Russell as a defendant, but Russell's bad-faith claim required him as a plaintiff. The parties' then-present alignment (upon which Russell's lack-of-diversity argument depended) appeared legally impossible. Except in unusual circumstances not relevant here, a party cannot be both plaintiff and defendant in the same case. *United States v. I.C.C.*, 337 U.S. 426, 430 (1949).

The district court came up with a solution. Citing its authority under Federal Rule of Civil Procedure 21, it severed the suit into two separate actions. In the first case, Russell and J. Carson could sue Liberty for bad-faith failure to defend and indemnify; the Trust could separately sue Liberty and Russell in the second. Thus, even if the Trust's equitable garnishment claim was a direct action, Russell could not be a plaintiff in it. Russell and J. Carson's attempted return to state court was thwarted.

The district court, exercising its now-apparent diversity jurisdiction over the bad-faith claim, granted Liberty's summary judgment motion. According to the district court, the Fiduciary Coverage did not apply to the Stock Agreement because the Stock Agreement was not an employee-benefit plan as contemplated by the policy. And the Directors & Officers Coverage did not protect Russell and J. Carson from liability arising out of contract breaches. Because their liability and defense costs arose out of their failure to pay Elizabeth the contractually-promised proceeds of Daniel's life insurance, Russell and J. Carson could not count on Liberty to defend or indemnify them under the Directors & Officers Coverage.

Russell and J. Carson now appeal, arguing that they were issued erroneous orders by a court that never had jurisdiction to begin with.

## II. Analysis

### A. Subject-Matter Jurisdiction

Russell and J. Carson argue that the district court should have remanded the case to state court for lack of subject-matter jurisdiction. Subject-matter jurisdiction is subject to de novo review. *Gilbert v. Monsanto Co.*, 216 F.3d 695, 699 (8th Cir. 2000).

Federal district courts have "original jurisdiction of all civil actions where the matter in controversy exceeds . . . $75,000. . . and is between citizens of different States." 28 U.S.C. § 1332(a)(1). Corporations are typically considered citizens of both the state in which they are incorporated and the state in which they have their principal place of business. 28 U.S.C. § 1332(c)(1). Here, the amount-in-controversy requirement is met, and none of the plaintiffs share Liberty's Massachusetts or Illinois citizenship.

Russell and J. Carson point out that "in any direct action against the insurer of a policy or contract of liability insurance, whether incorporated or unincorporated, to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of every State . . . of which the insured is a citizen." *Id.* That is, if the Trust's equitable garnishment claim is a "direct action," then Liberty shares Russell's Missouri citizenship. The result: no complete diversity and therefore no federal jurisdiction.

Jurisdiction therefore hangs on whether the Trust's equitable garnishment claim — brought under section 379.200 — is a "direct action" under 28 U.S.C.

§ 1332(c)(1).[3] Federal district courts in Missouri have gone both ways on the issue. *See, e.g.*, *Fleming v. Liberty Surplus Ins. Corp.*, No. 4:12–CV–1478 CDP, 2012 WL 6200526, at *1 (E.D. Mo. Dec. 12, 2012) (construing section 379.200 as a direct action); *Peterson v. Discover Prop. & Cas. Ins. Co.*, No. 11–6115–CV–SJ–ODS, 2012 WL 728353, at *2 (W.D. Mo. Mar. 6, 2012) (declining to interpret section 379.200 as a direct action). And the Missouri Supreme Court's description of section 379.200 as a direct action in other contexts has no bearing on whether it is a direct action as a matter of federal law. *See Johnston v. Sweany*, 68 S.W.3d 398, 403 (Mo. 2002) (calling a section 379.200 claim a "direct action").

We agree with the Fourth Circuit's recent holding that "direct action," as used in § 1332(c)(1), refers to "a suit in which the plaintiff sues a wrongdoer's liability insurer without joining or first obtaining a judgment against the insured." *Gateway Residences at Exch., LLC v. Ill. Union Ins. Co.*, 917 F.3d 269, 272 (4th Cir. 2019) (citing decisions from the First, Second, Sixth, Seventh, Ninth, and Eleventh Circuits likewise interpreting § 1332(c)(1)'s "direct action" provision narrowly). As the *Gateway* court explained, Congress created the "direct action" provision in § 1332(c)(1) in response to Wisconsin and Louisiana laws permitting claims against a tortfeasor's insurer without simultaneously suing the tortfeasor or obtaining a prior judgment against him. *Id.* at 272–73. Congress took issue with how, under those

---

[3]The statute permits a judgment creditor's recovery for "loss or damage on account of bodily injury or death, or damage to property if the defendant in such action was insured against said loss or damage." Mo. Rev. Stat. § 379.200. It is unclear whether monetary losses caused by a fiduciary-duty breach constitute "damage to property." But Liberty does not presently challenge the statute's application, and the Missouri Supreme Court has entertained possible section 379.200 claims in other cases where only monetary loss was at issue. *See Taylor v. Bar Plan Mut. Ins. Co.*, 457 S.W.3d 340, 343–44 (Mo. 2015) (acknowledging a potential section 379.200 claim following a legal-malpractice judgment).

laws, a plaintiff's state-law claim against a local tortfeasor's out-of-state insurer often wound up in federal court. *Id.* at 272 (citing S. Rep. 88-1308 (1964)). Compare that to section 379.200 of the Missouri Revised Statutes, which ostensibly requires *both* obtaining a prior judgment against the tortfeasor *and* joining him to the suit. Obtaining a prior judgment takes state-law tort claims off the table; joining a local tortfeasor to the suit destroys diversity. A claim brought under section 379.200 is therefore not a direct action under § 1332(c)(1).

Russell and J. Carson reject this conclusion. Quoting *Prendergast v. Alliance General Insurance Company*, they argue the suit is a direct action because "Missouri's equitable garnishment statute essentially does in two steps what the Louisiana statute . . . did in one . . . ." 921 F. Supp. 653, 655 (E.D. Mo. 1996). But the extra step matters. Obtaining a prior judgment or joining a local tortfeasor prevents the ill Congress sought to remedy with § 1332(c)(1)'s "direct action" provision, namely, federal litigation of state-law tort claims establishing a local tortfeasor's liability. And this is true even if Missouri courts occasionally let slide the failure to join the tortfeasor as a defendant. *See, e.g.*, *Mazdra v. Selective Ins. Co.*, 398 S.W.2d 841, 845–46 (Mo. 1966) (declining to reverse when plaintiff's failure to join the tortfeasor is raised for the first time on appeal).

Because section 379.200 is not a direct action, complete diversity exists. The district court therefore had jurisdiction over Russell and J. Carson's bad-faith claim against Liberty.[4]

---

[4]Russell and J. Carson also argue that the district court abused its discretion by resolving the jurisdictional question with a Rule 21 severance. *See* Fed. R. Civ. P. 21 ("[O]n its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party."). But we need not decide whether a jurisdiction-generating Rule 21 severance is an abuse of discretion. Because section 379.200 is not a direct action, the district court had subject-matter jurisdiction all along. Given the statute's language apparently requiring Russell as a defendant,

## B. Summary Judgment

According to Russell and J. Carson, Liberty should have protected them from Elizabeth's lawsuit. They argue that both the Fiduciary Coverage and the Directors & Officers Coverage protect them from liability and defense costs. The district court disagreed; it found that the Directors & Officers Coverage excluded Russell and J. Carson's conduct from coverage, and that the Fiduciary Coverage did not apply.

"We review a grant of summary judgment de novo, 'viewing the record most favorably to the nonmoving party and drawing all reasonable inferences for that party.' We also review the district court's construction of an insurance policy and interpretation of state law de novo." *Philadelphia Consol. Holding Corp. v. LSI-Lowery Sys., Inc.*, 775 F.3d 1072, 1076 (8th Cir. 2015) (citation omitted) (quoting *Munroe v. Cont'l W. Ins. Co.*, 735 F.3d 783, 786 (8th Cir. 2013)).

The parties agree that Kansas law applies. If an insurance policy's "language is clear and unambiguous, it must be taken in its plain, ordinary, and popular sense." *First Fin. Ins. Co. v. Bugg*, 962 P.2d 515, 519 (Kan. 1998). Courts "should not strain to create an ambiguity where, in common sense, there is none." *Id.* Whether a policy is ambiguous depends on "what a reasonably prudent insured would understand the language to mean." *Id.* "Generally, exceptions, limitations, and exclusions to insurance policies require narrow construction," and absent clear and unambiguous coverage limitations, "the insurance policy will be liberally construed in favor of the insured." *Marquis v. State Farm Fire & Cas. Co.*, 961 P.2d 1213, 1220 (Kan. 1998).

---

this court's *Glover v. State Farm* decision suggesting the same, and Russell's then-current role as plaintiff, the district court properly exercised its discretion. *See Glover v. State Farm Fire & Cas. Co.*, 984 F.2d 259, 261 (8th Cir. 1993) (affirming dismissal of a section 379.200 claim based on the failure to also sue the tortfeasor).

We turn to the Directors & Officers Coverage first. The policy excludes from coverage liability or defense costs "[b]ased upon, arising out of, or attributable to any actual or alleged liability under or breach of any contract or agreement." Given the company's broken promise to pay Daniel's life-insurance proceeds to Elizabeth, it seems that Liberty has no duty to cover Russell and J. Carson's liability and defense costs.

According to the Kansas Supreme Court, however, "where the insured's liability [is] premised upon a legal theory separate and distinct from the liability excluded by the policy, the policy provide[s] coverage for that claim." *Marquis*, 961 P.2d at 1222. Russell and J. Carson assert that is what happened here: the policy excludes coverage for contract breaches, but Elizabeth sued them for conversion and breach of fiduciary duty. She did not sue for breach of contract. Under the *Marquis* rule, they argue, the policy should cover Russell and J. Carson.

But we do not think *Marquis* applies. The Kansas Supreme Court has noted the *Marquis* rule's increasing disfavor. *Crist v. Hunan Palace, Inc.*, 89 P.3d 573, 578 (Kan. 2004) (finding the authority supporting *Marquis* "distinguished almost out of existence"). And the rule typically only applies in negligent-entrustment, -supervision, or -hiring cases. *See Marquis*, 961 P.2d at 1222–23 (holding that a policy's automobile exclusion does not exclude negligent supervision/hiring); *see also Catholic Diocese of Dodge City v. Raymer*, 840 P.2d 456, 457, 460–61 (Kan. 1992) (holding that a policy covers negligent supervision, even if a supervisee's intentional acts are not covered).[5]

---

[5]Some federal courts have nonetheless applied *Marquis* in other contexts. *See, e.g.*, *Cont'l Cas. Co. v. MultiService Corp.*, No. 06–2256–CM, 2009 WL 1788422, at *3 (D. Kan. June 23, 2009) (applying *Marquis* to a tortious-interference claim).

In fact, several Kansas cases hold that "theories of liability are irrelevant when injuries occur from intentional acts." *State Farm Ins. Cos. v. Gerrity,* 968 P.2d 270, 272–73 (Kan. App. 1998) (noting an exception for *Raymer*-type cases involving negligent entrustment, supervision, or hiring); *see also Bugg*, 962 P.2d at 526 ("[T]he theory of liability is irrelevant when the injuries arose out of an assault and battery."); *Crist*, 89 P.3d at 579–80 (acknowledging, without disapproving, *Gerrity* and *Bugg* when upholding *Marquis* in automobile-exception cases). If *Marquis* applied to contract-breach exclusions, someone could intentionally obtain the benefit of a breached contract and — depending on the plaintiff's legal theory — force his insurer to carry the burden. A prudent insured person would not understand the policy to permit such windfalls. And neither (we predict) would the Kansas Supreme Court. Therefore, the Directors & Officers Coverage does not cover Russell and J. Carson's conduct.

We can now turn to the Fiduciary Coverage, which protects Russell and J. Carson from liability caused by misdeeds done "in the discharge of their duties in their capacities, or solely by reason of their status, as fiduciaries of any Plan" or — in the case of negligence — "solely in the Administration of any Plan." A "Plan," according to the insurance policy, is any "employee benefit plan or program . . . sponsored solely by the Company for the benefit of the employees of the Company."

Russell and J. Carson claim that the Stock Agreement is a "Plan" under the policy. After all, they planned the Stock Agreement transactions for the benefit of Cates Sheet Metal employees (specifically, for Russell, J. Carson, and Daniel). And Elizabeth sued them for how they discharged their fiduciary duties. They therefore maintain that the Fiduciary Coverage — to which there is no contract-breach exclusion — covers their liability and defense costs.

We are not persuaded. The Stock Agreement benefitted primarily company shareholders; its effect on employees is accidental. Employment at Cates Sheet Metal

is not required (or even implicitly mentioned) by the Stock Agreement. We therefore find the Stock Agreement is not a "Plan" under the policy. Moreover, the Fiduciary Coverage only applies to misdeeds done "in the discharge of [Russell and J. Carson's] duties in their capacities, or solely by reason of their status, as fiduciaries of any Plan." But Russell and J. Carson's liability was independent of whether the Stock Agreement qualifies as a "Plan" under the policy.[6] They were not sued for breaching their duties as employee-benefit-plan fiduciaries; they were sued (and Russell found liable) for breaching their duties as fiduciaries of the company and its shareholders. We therefore conclude that the Fiduciary Coverage does not apply.

The district court rightly granted Liberty's motion for summary judgment.

### III. Conclusion

The district court had jurisdiction to grant Liberty's motion for summary judgment. And it was right to do so. We affirm both the denial of remand and the grant of summary judgment.

————————————————————

————————————————————

[6]This is consistent with our understanding of *Marquis*, which requires that exclusions to coverage be explicitly stated within the policy. *Marquis*, 961 P.2d at 1220. We are not examining a coverage exclusion here.

-12-