# United States Court of Appeals

### For the Eighth Circuit

_____

## No. 19-2594
_____

Pine Bluff School District

*Plaintiff - Appellant*

v.

Ace American Insurance Company

*Defendant - Appellee*

Chubb Insurance Company

*Defendant*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Pine Bluff

_____

Submitted: September 23, 2020
Filed: December 28, 2020

_____

Before SMITH, Chief Judge, BENTON and KOBES, Circuit Judges.

_____

SMITH, Chief Judge.

The Pine Bluff School District (PBSD) sued ACE American Insurance Company (ACE),[1] seeking a declaratory judgment stating that PBSD's legal liability insurance policy provided coverage for a teacher's retaliatory discharge lawsuit filed against PBSD and the principal of Pine Bluff High School. PBSD averred that coverage existed for the underlying lawsuit or, alternatively, ACE waived all defenses to coverage and was estopped from claiming no coverage. ACE moved for summary judgment, contending that no coverage existed because PBSD failed to meet reporting requirements for either of two separate claims-made-and-reported policies. The district court[2] granted summary judgment in favor of ACE, and PBSD appeals. We affirm.

I. *Background*

A. *Policies*

This dispute involves two identical legal liability policies that ACE issued to PBSD. On April 2, 2015, ACE issued to PBSD the ACE Scholastic Advantage Educators Legal Liability Policy No. EON G23670471 003 for the period of April 2, 2015, to February 1, 2016 ("2015 Policy"). On February 1, 2016, ACE issued to PBSD the ACE Scholastic Advantage Educators Legal Liability Policy No. EON G23670471 004 for the period of February 1, 2016 to February 1, 2017 ("2016 Policy").

The Declarations provision of the policies states:

> THIS POLICY IS A CLAIMS MADE AND REPORTED POLICY. EXCEPT AS OTHERWISE PROVIDED HEREIN, THIS POLICY COVERS ONLY CLAIMS FIRST MADE AGAINST THE INSUREDS AND REPORTED TO THE INSURER DURING THE POLICY PERIOD OR EXTENDED REPORTING PERIOD, IF

---

[1]ACE "is an indirect, wholly owned subsidiary of Chubb Limited (NYSE: CB), a public entity." Appellee's Br. at ii.

[2]The Honorable Kristine G. Baker, United States District Judge for the Eastern District of Arkansas.

APPLICABLE. AMOUNTS INCURRED FOR DAMAGES AND CLAIMS EXPENSES SHALL BE APPLIED AGAINST THE RETENTION AMOUNT. PLEASE READ THIS POLICY CAREFULLY.

Ex. A at 1, *Pine Bluff Sch. Dist. v. ACE Am. Ins. Co.*, No. 5:18-cv-00185-KGB (E.D. Ark. 2019), ECF No. 13-1 (bold omitted); Ex. B at 1, *Pine Bluff Sch. Dist. v. ACE Am. Ins. Co.*, No. 5:18-cv-00185-KGB (E.D. Ark. 2019), ECF No. 13-2 at 1 (bold omitted).

The Insuring Agreement for the policies provides coverage for claims that are "first made against [PBSD] and reported to [ACE] during the Policy Period." Ex. A at 3 (bold omitted); Ex. B at 3 (bold omitted). Both policies define "Claim" to include:

2.      a civil proceeding against any Insured seeking monetary Damages or non-monetary or injunctive relief, commenced by the service of a complaint or similar pleading;

.      .      .

4.      a civil, administrative[,] or regulatory proceeding against any Insured commenced by:

a.      the issuance of a notice of charge or formal investigative order, including without limitation any such proceeding by or in association with:

i.      the Equal Employment Opportunity Commission [(EEOC)]….

Ex. A at 6; Ex. B at 6.

Both policies contain a "Limits of Liability" section. Ex. A at 22 (all caps omitted); Ex. B at 22 (all caps omitted). That section contains a subsection entitled "Limit of Liability," which provides, in relevant part:

> All Claims arising out of the same Wrongful Act and all Interrelated Wrongful Acts of the Insureds shall be deemed to be one Claim. Such Claim shall be deemed to be first made on the date the earliest of such Claim is first made, regardless of whether such date is before or during the Policy Period.[3]

Ex. A at 22 (bold omitted); Ex. B at 22 (bold omitted).

The policies define "Wrongful Act" as including "a wrongful Employment Practice committed or attempted by the Educational Institution or by any Insured Educator acting solely in their capacity as such and on behalf of the Educational Institution." Ex. A at 15 (bold omitted); Ex. B at 15 (bold omitted). "Wrongful Employment Practice" includes, among other things, "wrongful dismissal, discharge or termination, whether actual or constructive"; "[d]iscrimination"; "[s]exual harassment or unlawful workplace harassment"; "wrongful discipline"; and "[r]etaliation" "of any past, present or prospective full-time, part-time, seasonal and temporary Employee." Ex. A at 16 (bold omitted); Ex. B at 16 (bold omitted). The policies also define "Interrelated Wrongful Acts" as "[a]ll Wrongful Acts that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of related facts, circumstances, situations, events, transactions or causes." Ex. A at 11 (bold omitted); Ex. B at 11 (bold omitted).

Under the policies, an insured must "as a condition precedent to their rights under [the policies], give to the Insurer written notice of any Claim as soon as practicable, but in no event later than 30 days after … the end of the Policy Period." Ex. A at 23 (bold omitted); Ex. B at 23 (bold omitted). Endorsement 4 to the 2015 Policy amends and extends the 30-day grace reporting period to 60 days.

Both policies also contain a provision, stating: "The titles and headings to the various parts, sections, subsections[,] and endorsements of the Policy are included

---

[3]We will hereinafter refer to this provision as the "single claim provision."

-4-

solely for ease of reference. They do not in any way limit, expand[,] or otherwise affect the provisions of such parts, sections, subsections[,] or endorsements." Ex. A at 26 (bold omitted); Ex. B at 26 (bold omitted).

### B. *Underlying Facts*

About eight months after ACE issued the 2015 Policy to PBSD, Celeste Alexander, a teacher at Pine Bluff High School during the 2014–2015 school year, filed a charge of discrimination on December 1, 2015, with the Equal Employment Opportunity Commission ("EEOC charge"). Alexander's EEOC charge alleged that PBSD retaliated against her for alleging that her supervisor—the high school principal—had sexually harassed her. Alexander's EEOC charge specifically alleged:

> I was hired September 19, 2014, as a Math Lab Coordinator/Math Teacher. I was identified for RIF in April 2015. I filed a sexual harassment complaint against my Principal in June 2015. I was not hired for the next school year and my employer hired uncertified and lesser-qualified math teachers in August 2015. I was told that I would never be rehired for making false allegations. I believe I was not rehired in retaliation for filing sexual harassment allegations in violation of Title VII of the Civil Rights Act of 1964, as amended.

Resp. to Statement of Undisputed Facts, *Pine Bluff Sch. Dist. v. ACE Am. Ins. Co.*, No. 5:18-cv-00185-KGB (E.D. Ark. 2019), ECF No. 25 at 9–10.

PBSD received the EEOC Charge, responded to it, and provided documents to the EEOC.

The following seven dates are crucial to the appeal: (1) on January 21, 2016, PBSD submitted a Mediation Statement to the EEOC; (2) on January 28, 2016, PBSD submitted a Position Statement to the EEOC; (3) on January 29, 2016, in response to the EEOC's inquiries and document requests, PBSD submitted written responses and documents; (4) on February 1, 2016, the 2015 Policy expired, and that

same day, ACE issued the 2016 Policy; (5) on April 1, 2016, the 60-day grace period for PBSD to report claims under the 2015 Policy expired; (6) on June 24, 2016, the EEOC issued a right-to-sue letter to Alexander, which gave her 90 days from the receipt of the letter to file suit; and (7) on September 22, 2016, Alexander filed suit against PBSD and the principal.

Alexander's federal complaint alleged that her supervisor—the high school principal—began sexually harassing her around November 2014. She alleged that after she rejected his advances, the principal retaliated against her by improperly scrutinizing her work; ignoring her e-mails; calling her to meetings without others present; and falsely accusing her of unprofessional conduct. According to Alexander, she received notification in April 2015 that she was one of several teachers terminated in a reduction of force (ROF). She alleged that she "was not called back from the ROF or rehired, because of her complaints of sexual harassment" and that "[o]ther teachers were hired … despite being lesser qualified than Plaintiff Alexander in violation of Defendant PBSD's Reduction of Force Policies." Compl., *Pine Bluff Sch. Dist. v. ACE Am. Ins. Co.*, No. 5:18-cv-00185-KGB (E.D. Ark. 2018), ECF No. 2 at 57. She alleged that she reported the sexual harassment to PBSD on or around June 3, 2015.

On October 3, 2016, PBSD first reported Alexander's lawsuit to ACE through its insurance agent. PBSD's agent submitted to ACE a loss notice and attached a copy of the lawsuit and an e-mail from PBSD's counsel. Counsel's e-mail provided that "[t]here was a related EEOC claim and investigation by the Arkansas Department of Education Professional Licensure Standards Board, which dismissed the allegations. The EEOC issued a right to sue letter on June 24, 2016." Resp. to Statement of Undisputed Facts at 12 (alteration in original).

On October 20, 2016, ACE acknowledged receipt of Alexander's lawsuit and requested that PBSD provide a copy of Alexander's EEOC charge and "any documents relating to the [June 2015] grievance process." *Id.* (alteration in original). Five days later, on October 25, 2016, ACE issued a preliminary coverage letter to

-6-

PBSD and requested that PBSD submit to ACE a "(i) copy of the charge filed by Alexander with the … EEOC … and (ii) a copy of any written demands, complaints, grievances, etc. from Alexander received by the Insured prior to the EEOC charge and lawsuit." Ex. K at 1–2, *Pine Bluff Sch. Dist. v. ACE Am. Ins. Co.*, No. 5:18-cv-00185-KGB (E.D. Ark. 2019), ECF No. 13-11 (bold omitted). ACE "reserve[d] the right to amend and/or deny coverage based upon review of this information." *Id.* at 2. In the letter, ACE noted that its "investigation of this matter is continuing"; as a result, ACE advised PBSD that it

> reserves all rights with regard to the above referenced provisions, as well as all other rights, remedies and defenses under the Policy, at law, and in equity. These reservations include, but are not limited to, the right to withdraw the defense provided in this matter and the right to amend this letter to address additional coverage issues as they may arise, based upon the Policy and/or any additional facts that may come to [ACE's] attention. Nothing contained in this letter, and no action on our part in investigating these matters, should be construed as an admission of coverage or as a waiver of any right, remedy, or defense that may be available to [ACE].

*Id.* at 3.

ACE repeated its request to PBSD for copies of EEOC filings on November 22, 2017. That same day, PBSD's counsel sent the EEOC charge to ACE.

After reviewing the EEOC documentation it had requested, ACE issued a coverage-denial letter to PBSD on February 14, 2018. ACE informed PBSD in the letter that there was "'no coverage under the [2015] Policy' because ACE 'was first provided with notice of this matter on October 3, 2016, more than 60 days after the end of the [2015] Policy.'" Resp. to Statement of Undisputed Facts at 15 (alterations in original). ACE also notified PBSD that "'coverage for this matter [was] precluded in its entirety' under the 2016 Policy because 'the Claim in this matter is considered made … prior to the policy period of February 1, 2016, to February 1, 2017.'" *Id.* (second alteration in original).

In March 2018, PBSD settled Alexander's lawsuit for $50,000. She also received a $7,000 payment to her retirement account and reemployment with the school district as part of the settlement. Alexander was awarded $100,000.00 in attorneys' fees and $19,367.37 in costs.

PBSD filed suit against ACE on June 1, 2018, in Arkansas state court. It sought a declaration of coverage and to recover its legal fees incurred and settlement monies paid for Alexander's lawsuit. PBSD asserted in the alternative that ACE waived all defenses to coverage and that ACE was estopped from claiming no coverage. ACE removed the case to federal court and moved for summary judgment. It argued that Alexander's EEOC charge and subsequent retaliatory discharge lawsuit constituted a single claim that was "first made" against PBSD during the 2015 Policy period but not reported until after the 2015 grace reporting period expired. In response, PBSD argued that the policies contain ambiguous language, which precluded summary judgment in ACE's favor.

The district court granted summary judgment to ACE. The district court determined that "the Policy language in the 2015 and 2016 Policies is unambiguous and that Ms. Alexander's December 1, 2015, EEOC charge and her subsequent lawsuit constitute a single claim that was 'first made' against PBSD during the 2015 Policy period." *Pine Bluff Sch. Dist. v. ACE Am. Ins. Co.*, 402 F. Supp. 3d 548, 561 (E.D. Ark. 2019). The court then concluded that ACE was "entitled to summary judgment as a matter of law for any coverage sought under the 2015 Policy." *Id.* at 564. The court made particular note that "PBSD did not report the claim to ACE until October 3, 2016, six months after the 60-day grace reporting period after the 2015 Policy expired." *Id.* The district court also determined that the 2016 Policy did not provide coverage because "the claim was first made against PBSD on December 1, 2015, before the 2016 Policy took effect." *Id.* at 565.

Additionally, the court rejected PBSD's waiver and estoppel arguments. It refused to "find under these circumstances that ACE unreasonably delayed its

-8-

coverage determination" and recognized that "Arkansas law does not permit waiver and estoppel to broaden the scope of coverage afforded by a policy." *Id.* at 567. The district court granted ACE's motion for summary judgment. PBSD appeals.

## II. *Discussion*

On appeal, PBSD seeks reversal of the district court's grant of summary judgment in ACE's favor on two bases: first, the 2015 Policy and 2016 Policy include ambiguous language that must be construed in its favor, and second, even if the policies are unambiguous, the doctrines of waiver and estoppel preclude ACE from denying coverage.

"We review a grant of summary judgment de novo, viewing the record most favorably to the nonmoving party and drawing all reasonable inferences for that party. We also review the district court's construction of an insurance policy and interpretation of state law de novo." *Russell v. Liberty Ins. Underwriters, Inc.*, 950 F.3d 997, 1003 (8th Cir. 2020) (quotations omitted).

## A. *Coverage*

According to PBSD, the policies' single claim provision is ambiguous. Specifically, PBSD asserts that the single claim provision is found in the Limits of Liability section. PBSD argues that the Limits of Liability section where the language appears "is only made in reference to the ultimate amounts for which ACE would be liable, not to whether coverage exists under the policy." Appellant's Br. at 9. As a result, PBSD submits that the single claim provision "is more logically read as a type of 'anti-stacking' provision." *Id.* In support of its argument, PBSD notes that the single claim provision does not appear in the insuring language or in the definition of *claim*. And, it points out that the definition of *Interrelated Wrongful Acts* does not include language about a single claim, nor is language found anywhere in the "Notices" section or "Exclusions" section of the policies.

PBSD argues that limiting the application of the single claim provision to only a determination of ACE's liability exposure would mean that it otherwise satisfied

the definition of *claim* in the 2016 Policy for coverage purposes. PBSD contends that coverage exists under the 2016 Policy for Alexander's retaliatory discharge lawsuit because it timely notified ACE of the lawsuit on October 3, 2016—during the 2016 policy period. PBSD's ambiguity argument is unpersuasive.

"[W]ell settled" Arkansas[4] law "regarding the construction of insurance contracts" provides that "[t]he language in an insurance policy is to be construed in its plain, ordinary, and popular sense." *McGrew v. Farm Bureau Mut. Ins. Co. of Ark.*, 268 S.W.3d 890, 894–95 (Ark. 2007). "If the language of the policy is unambiguous, we will give effect to the plain language of the policy without resorting to the rules of construction." *Id.* at 895. On the other hand, if the language of the policy "is ambiguous, and thus susceptible to more than one reasonable interpretation, [the court must] construe the policy liberally in favor of the insured and strictly against the insurer." *Id.*

"Language is ambiguous if there is doubt or uncertainty as to its meaning and it is fairly susceptible to more than one reasonable interpretation." *Corn v. Farmers Ins. Co.*, 430 S.W.3d 655, 661 (Ark. 2013). The court resolves as a matter of law whether a policy's language is ambiguous. *Id.*; *see also Scottsdale Ins. Co. v. Morrowland Valley Co., LLC*, 411 S.W.3d 184, 192 (Ark. 2012) ("Although the meaning of an ambiguity may become a question for the fact-finder if parol evidence has been admitted to resolve that ambiguity, where the meaning of the language of a written contract does not depend on disputed extrinsic evidence, the construction and legal effect of the contract are questions of law." (cleaned up)). "The terms of an insurance contract are not to be rewritten under the rule of strict construction against the company issuing it so as to bind the insurer to a risk which is plainly excluded and for which it was not paid." *Corn*, 430 S.W.3d at 661.

---

[4]The parties agree that Arkansas law governs our interpretation of the 2015 Policy and 2016 Policy. *See Secura Ins. v. Horizon Plumbing, Inc*., 670 F.3d 857, 861 (8th Cir. 2012) ("State law governs the interpretation of insurance policies when federal jurisdiction is based on diversity of citizenship.").

The 2015 Policy and 2016 Policy are "claims made and reported polic[ies]." Ex. A at 1; Ex. B at 1. Under Arkansas law, claims-made-and-reported policies require that a claim be made and reported in the same policy period. *See Cont'l Cas. Co. v. Walker*, 741 F. Supp. 2d 987, 991 (E.D. Ark. 2008) ("Under Arkansas law, a 'claims made and reported policy' can only be triggered if the claim is made in writing and given to the insurer during the policy period.").[5]

The Insuring Agreement for the 2015 Policy and 2016 Policy grants coverage for "a Claim *first made* against [PBSD] and reported to [ACE] during the Policy Period." Ex. A at 3 (emphasis added) (bold omitted); Ex. B at 3 (emphasis added) (bold omitted). The policies define "claim" as including "a civil, administrative[,] or regulatory proceeding against any Insured commenced by … the issuance of a notice of charge or formal investigative order, including without limitation any such proceeding by or in association with … the [EEOC]." Ex. A at 6 (bold omitted); Ex. B at 6 (bold omitted). Additionally, the policies define "claim" as including "a civil proceeding against any Insured seeking monetary Damages or non-monetary or injunctive relief, commenced by the service of a complaint or similar pleading." Ex. A at 6 (bold omitted); Ex. B at 6 (bold omitted). PBSD does not dispute the district court's conclusion that under a plain reading of the policies, "Alexander's December 1, 2015, EEOC charge against PBSD constitutes a claim under the Policies" and "Alexander's subsequent lawsuit filed against PBSD on September 22, 2016, also constitutes a claim under the Policies." *Pine Bluff Sch. Dist.*, 402 F. Supp. 3d at 559–60.

---

[5]*See also Cont'l Cas. Co. v. Jewell, Moser, Fletcher & Holleman*, No. 4:04-cv-002309-JMM, 2005 WL 1925964, at *2 (E.D. Ark. Aug. 11, 2005) ("Arkansas courts are clear that in order for a 'claims made and reported policy' to apply, the claim must be made in writing and given to the insurer during the policy period."); *Campbell & Co. v. Utica Mut. Ins. Co.*, 820 S.W.2d 284, 286 (Ark. Ct. App. 1991) (en banc) ("Coverage is therefore provided under this policy when two conditions are met: first, a claim … must be made against the insured during the policy period, and second, written notice of the claim must be given to [the insurer] during the policy period.").

The 2015 Policy period spanned from April 2, 2015, to February 1, 2016. The 2016 Policy period spanned from February 1, 2016, to February 1, 2017. PBSD reasons that because Alexander's September 22, 2016 "civil action was reported to ACE on October 3, 2016, which was during the 2016 [P]olicy period," "ACE was timely notified of the lawsuit during the 2016 [P]olicy period, and coverage exists in regards to that claim." Appellant's Br. at 20.

PBSD's reading of the 2016 Policy, however, requires that the single claim provision appearing in the Limits of Liability section of both policies not apply. If the single claim provision applies, PBSD's notice to ACE would be untimely, and no coverage would be available for the Alexander claim. The Limit of Liability subsection contained in the Limits of Liability section of the polices sets forth the single claim provision:

> All Claims arising out of the same Wrongful Act and all Interrelated Wrongful Acts of the Insureds shall be deemed to be *one Claim*. Such Claim shall be deemed to be *first made on the date the earliest of such Claim is first made, regardless of whether such date is before or during the Policy Period*.

Ex. A at 22 (emphasis added) (bold omitted); Ex. B at 22 (emphasis added) (bold omitted).

Here, both claims—the December 1, 2015 EEOC charge and the September 22, 2016 lawsuit—"ar[ose] out of the same Wrongful Act" of sexual harassment and retaliation. *See* Ex. A at 22 (bold omitted); Ex. B at 22 (bold omitted).[6] Alexander's EEOC charge alleged that she had "filed a sexual harassment complaint against [her] Principal" and that she "believe[d] [she] was not rehired in retaliation for filing

---

[6]The 2015 Policy and 2016 Policy define "Wrongful Act" as a "Wrongful Employment Practice" and, in turn, define "Wrongful Employment Practice" as including "[s]exual harassment" and "[r]etaliation." Ex. A at 15–16 (bold omitted); Ex. B at 15–16 (bold omitted).

-12-

sexual harassment allegations" against him. Resp. to Statement of Undisputed Facts at 9.

Alexander's retaliatory discharge lawsuit mirrored her EEOC charge. She alleged that she "was not called back from the ROF or rehired, because of her complaints of sexual harassment" and that "[o]ther teachers were hired … despite being lesser qualified than Plaintiff Alexander in violation of Defendant PBSD's Reduction of Force Policies." Compl. at 57. In fact, when PBSD notified ACE of Alexander's retaliatory discharge lawsuit, PBSD's counsel advised ACE that "[t]here was a *related EEOC claim* and investigation by the Arkansas Department of Education Professional Licensure Standards Board" concerning Alexander's allegations of sexual harassment and retaliation. Resp. to Statement of Undisputed Facts at 12 (alteration in original) (emphasis added).

Because Alexander's EEOC charge and lawsuit "ar[ose] out of the same Wrongful Act," they are considered "one Claim" under the single claim provision. Ex. A at 22 (bold omitted); Ex. B at 22 (bold omitted). This "Claim … [is] deemed to be first made on the date the earliest of such Claim is first made." Ex. A at 22 (bold omitted); Ex. B at 22 (bold omitted). The earliest date this claim was made is December 1, 2015—the date that Alexander filed the EEOC charge.

The question, then, is whether the single claim provision located in the Limits of Liability section applies to PBSD's claim. If the single claim provision applies, then neither the 2015 Policy nor the 2016 Policy would provide coverage. No coverage would exist under the 2015 Policy because "PBSD did not report the claim to ACE until October 3, 2016, six months after the 60-day grace reporting period after the 2015 Policy expired." *Pine Bluff Sch. Dist.*, 402 F. Supp. 3d at 564. And no coverage would exist under the 2016 Policy because "the claim was first made against PBSD on December 1, 2015, before the 2016 Policy took effect." *Id.* at 565.

We hold that the single claim provision applies to PBSD's claim. The single claim provision "unambiguously does bear upon the scope of coverage, *i.e.*, what

substantive claims are covered, not just upon calculating the limits of [ACE's] liability or retention amounts." *Worthington Fed. Bank v. Everest Nat'l Ins. Co.*, 110 F. Supp. 3d 1211, 1225 (N.D. Ala. 2015).

The Insuring Agreement for the policies provides coverage for claims that are "*first made* against [PBSD] and reported to [ACE] during the Policy Period." Ex. A at 3 (emphasis added) (bold omitted); Ex. B at 3 (emphasis added) (bold omitted). "That dovetails with the polic[ies'] 'single claim' provision …." *Worthington*, 110 F. Supp. 3d at 1225. The single claim provision provides that "[a]ll Claims arising out of the same Wrongful Act … shall be deemed to be one Claim" and that this single claim "shall be deemed to be *first made* on the date the earliest of such Claim is first made, regardless of whether such date is *before or during* the Policy Period." Ex. A at 22 (emphasis added) (bold omitted); Ex. B at 22 (emphasis added) (bold omitted). "Courts have construed such timing-of-claim language to allow an insurer to deny coverage for a claim made during the policy period where the claim is sufficiently related to a covered claim that was first made before the Policy Period.'" *Worthington*, 110 F. Supp. 3d at 1225–26 (cleaned up).

PBSD's argument "that the 'single claim' provision is intended only to set the limits of liability for a single claim and retention amounts is based in large part upon the fact that the provision is located within the [2015 Policy and 2016 Policy] under the section header … Limit of Liability." *Id.* at 1225. But this contention is flawed. Both policies contain a provision stating that "[t]he titles and headings to the various parts, sections, subsections[,] and endorsements of the Policy are included solely for ease of reference. They do not in any way limit, expand or otherwise affect the provisions of such parts, sections, subsections or endorsements." Ex. A at 26 (bold omitted); Ex. B at 26 (bold omitted). Most courts interpreting substantially similar single claim provisions have agreed.[7]

---

[7]*See, e.g.*, *Worthington*, 110 F. Supp. 3d at 1225–26; *Weaver v. Axis Surplus Ins. Co.*, No. 13-cv-7374-SJF-ARL, 2014 WL 5500667, at *15 (E.D.N.Y. Oct. 30, 2014) ("Regardless of the heading under which [the single claim provision] appears, a reasonable person reading the language in [the single claim provision] would

Accordingly, we hold that the district court did not err in granting summary judgment in ACE's favor. The single claim provision unambiguously applies, and neither the 2015 Policy nor the 2016 Policy provide coverage for PBSD's claim based on Alexander's September 22, 2016 lawsuit.

## B. *Waiver and Estoppel*

PBSD alternatively argues that that PBSD should be precluded from denying coverage because of the doctrines of waiver and estoppel. In its brief, PBSD acknowledges that ACE's preliminary coverage letter dated October 25, 2016 "purports to 'reserve[] all rights with regard to the above referenced provisions, as well as all other rights, remedies and defenses under the Policy.'" Appellant's Br. at 30 (quoting Ex. K at 3). Nevertheless, PBSD cites ACE's failure to send its denial-of-coverage letter until February 15, 2018, as evidence that the doctrines of waiver

interpret it to have only one meaning: that the Policy bars coverage for claims deemed to be first made before the policy period, and not that it applies only to determine whether [a certain monetary amount] of liability is available to the insured based on the relationship between current and prior Claims …." (quotation omitted)), *aff'd*, 639 F. App'x 764 (2d Cir. 2016); *Biochemics, Inc. v. Axis Reinsurance Co.*, 963 F. Supp. 2d 64, 70–71 (D. Mass. 2013) (rejecting the argument that a nearly identically worded provision, found under a heading titled "Limits of Liability," should be interpreted only to limit the total amount of coverage and not to act as a complete bar to coverage because "a reasonable insured could not have ignored that section V.A of the policy bars coverage for a claim deemed to be first made before the policy period—including any later on the same interrelated wrongful acts").

PBSD relies on *Fiserv Solutions, Inc. v. Endurance American Specialty Ins. Co.*, No. 11-C-0603, 2016 WL 8674661 (E.D. Wis. Sept. 30, 2016), in support of its argument "that the 'single claim' language is not found in the section expressly labeled 'Exclusions' and cannot be considered as such." *Pine Bluff Sch. Dist.*, 402 F. Supp. 3d at 562. *Fiserv* is inapposite for the reasons set forth by the district court. *See id.* at 562–63.

and estoppel are applicable. PBSD contends that "ACE ignored the issues related to the EEOC claim for nearly a year." *Id.* According to PBSD, "ACE's own oversight and lack of diligence in pursuing these documents for more than a year, in conjunction with their course of conduct in accepting this matter for a significant period of time, reasonably led PBSD to believe that coverage existed in this matter." *Id.* at 32. PBSD maintains that ACE learned of the EEOC charge filing not later than when it received a January 24, 2017 litigation report. That report provides, "Plaintiff filed an EEOC charge on December 1, 2015." Ex. 1 at 12, *Pine Bluff Sch. Dist. v. ACE Am. Ins. Co.*, No. 5:18-cv-00185-KGB (E.D. Ark. 2019), ECF No. 23-1. According to PBSD, ACE failed to raise the coverage issues at that time and instead delayed addressing them until November 22, 2017—the day that PBSD's counsel sent the EEOC charge to ACE.

Additionally, PBSD asserts that "ACE further demonstrated that [it] waived its coverage position by hiring separate counsel to represent [the principal], in his individual capacity, in the action brought by Alexander." Appellant's Br. at 33. According to PBSD, ACE "consented to the hiring of [separate counsel] to represent [the principal] in his individual capacity in the Alexander case." *Id.*

"[U]nder Arkansas law[,] 'the doctrine of waiver[8] or estoppel[9] cannot be given the effect of enlarging or extending the coverage as defined in the contract.'" *J-McDaniel Constr. Co. v. Mid-Continent Cas. Co.*, 761 F.3d 916, 919 (8th Cir. 2014) (quoting *Harasyn v. St. Paul Guardian Ins. Co.*, 75 S.W.3d 696, 702 (Ark.

---

[8]"A waiver is an intentional abandonment or relinquishment of a known right." *Sovereign Camp, Woodmen of the World, v. Newsom*, 219 S.W. 759, 767 (Ark. 1920) (quotation omitted).

[9] "Estoppel arises where, by the fault of one party, another has been induced, ignorantly or innocently, to change his position for the worse in such manner that it would operate as a virtual fraud upon him to allow the party by whom he has been misled to assert the right in controversy." *Newsom*, 219 S.W. at 768 (quotation omitted).

2002)), *as corrected* (Aug. 4, 2014). "Nor may estoppel 'be asserted to extend coverage under a contract in which it was excluded by specific language.'" *Id.* (quoting *Harasyn*, 75 S.W.3d at 702). As the Arkansas Supreme Court has explained:

> The doctrine of waiver or estoppel, based upon the conduct or action of the insurer, is not available to bring within the coverage of a policy risks not covered by its terms, or risks expressly excluded therefrom, and the application of the doctrine in this respect is to be distinguished from the waiver of, or estoppel to deny, grounds of forfeiture. That is, conditions going to the coverage or scope of the policy, as distinguished from those furnishing a ground for forfeiture, may not be waived by implication from conduct or action, without an express agreement to that effect supported by a new consideration.

> A cause of action cannot arise on the theory of estoppel. This follows from the fact that an estoppel is defensive in character. It does not create a cause of action. Its function is to preserve rights and not to bring into being a cause of action.

> An insurer may waive a defense by his conduct and become estopped to thereafter assert it, but in any case estoppel operates to preserve rights already acquired and to prevent forfeitures or avoidance of duties, but not to create new rights or new causes of action.

> Similarly, it has been said that the doctrine of estoppel is protective only and may be invoked as a shield but not as a weapon of offense. It is not effective to create a cause of action and should not be used for gain or profit.

*Peoples Protective Life Ins. v. Smith*, 514 S.W.2d 400, 406–07 (Ark. 1974).

The present case concerns claims-made-and-reported policies. "[A]s 'claims made and reported' insurance policies, the requirement that [the insured] report plaintiff['s] claim to [the insurer] in the same policy period in which he became aware of [the claim] goes to the *scope of coverage* of the policies. It is not merely a condition of forfeiture." *Pizzini v. Am. Int'l Specialty Lines Ins. Co.*, 210 F. Supp.

2d 658, 675 (E.D. Pa. 2002) (emphasis added), *aff'd*, 107 F. App'x 266 (3d Cir. 2004). As a result, applying Arkansas law, the doctrines of waiver and estoppel are inapplicable. *See J-McDaniel Const. Co.*, 761 F.3d at 919; *Peoples Protective Life Ins.*, 514 S.W.2d at 406–07.

## III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____