# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 20-2192

———————————————

James F. Dowden, Trustee of the Bankruptcy Estate of Hugh Dana Huchingson

*Plaintiff - Appellant*

v.

Cornerstone National Insurance Company

*Defendant - Appellee*

——————————

Appeal from United States District Court
for the Western District of Arkansas - Hot Springs

——————————

Submitted: February 19, 2021
Filed: August 30, 2021

——————————

Before SMITH, Chief Judge, WOLLMAN and STRAS, Circuit Judges.

——————————

SMITH, Chief Judge.

James F. Dowden ("the Trustee") is the bankruptcy trustee for Hugh Dana Huchingson. Cornerstone National Insurance Company ("Cornerstone"), a liability insurance company, issued an automobile liability insurance policy ("Policy") to Huchingson. The Trustee sued Cornerstone on Huchingson's behalf, alleging that Cornerstone breached its duty to defend Huchingson by failing to timely file an

answer to a complaint filed against Huchingson. We affirm the district court's[1] grant of summary judgment in favor of Cornerstone on the Trustee's claim because Cornerstone had no duty to defend when Huchingson did not strictly comply with a condition precedent to coverage.

## I. *Background*
### A. *Underlying Facts*

Cornerstone issued a Policy to Huchingson with a limit of $25,000 per person for bodily injury. The Policy states:

**PART G – DUTIES AFTER AN ACCIDENT OR LOSS**

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

A.  We must be notified promptly of how, when and where the accident or loss happened. Notice should also include the names and addresses of any injured persons and of any witnesses.
B.  A person seeking any coverage must:
  1.  Cooperate with us in the investigation, settlement or defense of any claim or suit.
  2.  Promptly send us copies of any notices or legal papers received in connection with the accident or loss.
  3.  Submit, as often as we reasonably require:
    a.  To physical exams by physicians we select. . . .
    b.  To examination under oath and subscribe the same.
  4.  Authorize us to obtain:
    a.  Medical reports; and
    b.  Other pertinent records.
  5.  Submit a proof of loss when required by us.

---

[1]The Honorable Susan O. Hickey, Chief Judge, United States District Court for the Western District of Arkansas.

. . . .

PART H – GENERAL PROVISIONS

. . . .

LEGAL ACTION AGAINST US
A.     No legal action may be brought against us until there has been full
       compliance with all the terms of this policy. . . .

Appellant's Add. at 12–13 (bold omitted).

The Policy was in effect on March 31, 2017, when Huchingson's car collided with another vehicle, injuring Belinda Gail Duggan. Huchingson reported the accident to Cornerstone on April 1, 2017. Cornerstone assigned claims adjuster Dina Roberts to Huchingson's claim. Huchingson spoke with Roberts on April 3, 2017.

Duggan filed a lawsuit in state court against Huchingson on April 24, 2017, for personal injuries caused by the accident. Huchingson was served with the summons and complaint on May 15, 2017.

Two days after being served, Huchingson called Cornerstone's toll-free number for reporting claims. Harmon Solutions Group (HSG), a third-party answering service, monitored that number and "would intake new claims and transmit the claim information in memo form to [Cornerstone] via email." *Dowden v. Cornerstone Nat'l Ins. Co.*, No. 6:18-cv-6123, 2020 WL 2770422, at *1 (W.D. Ark. May 28, 2020). Jessica Parton answered Huchingson's call. Huchingson began by telling Parton, "I need to talk to somebody about an accident I was in on March the 31st." Appellant's Add. at 15. He stated, "[T]hey're trying to sue me." *Id.* Next, Huchingson told Parton that he had not filed a claim, though he *had* filed a claim and had also spoken with

his assigned claims adjuster. Parton explained that she would file Huchingson's claim and that a representative would be assigned to him.

The district court summarized the rest of their exchange:

> Parton asked [Huchingson] if Duggan was injured. [Huchingson] responded that she was and that "they sent me . . . a report saying that . . . she [is] suing me and saying that she was hurt pretty bad." Parton then ask[ed], "does it say what kind of injury she had?" [Huchingson] replied, "Yeah. Just a second here. Okay now this is her attorney that wrote all this out—you know—it's not on the police report or nothing." [Huchingson] then began reading from a section of the complaint filed by Duggan in state court that described her damages. At no point during the conversation with Parton did [Huchingson] state that he was reading from a complaint or that he had received a summons and complaint. Instead, [Huchingson] referred to a "report" written by Duggan's attorney.
>
> After [Huchingson] finished reading from the "report," Parton stated that "as far as her suing you—I'm gonna make a note of that as well." She then asked [Huchingson] if Duggan was suing him for medical expenses, and [Huchingson] stated, "that and the car maybe." Parton asked if the police report states who is at fault, and [Huchingson] responded that "they're trying to say I failed to yield." After Parton stated that she had all the information required, she asked [Huchingson] if he had anything to add. [Huchingson] asked if "they are gonna get the police report or did he need to send one." Parton responded, "I believe that your representative is gonna go ahead and get it. Their own copy of the police report. But if you are required to send anything in they'll let you know how to do it." The phone call ended shortly thereafter. HSG's memo to Cornerstone states that Duggan "is suing the insured for the accident, including medical expenses, pain and suffering and possibly the vehicle."

*Dowden*, 2020 WL 2770422, at *1–2 (cleaned up).

Huchingson did not file an answer to the Duggan complaint. The state court entered a default judgment against Huchingson on June 29, 2017, and set a date for a damages trial. On August 31, 2017, before the damages trial, Huchingson sent copies of the complaint, summons, and notice of the damages trial to Cornerstone.

Cornerstone hired an attorney to defend Huchingson at the damages trial. It notified him by letter that it was doing so under "a complete reservation of all of Cornerstone's rights" under the Policy. Separate App. for Appellant, Vol. III, at 989. Following the damages hearing, the court entered a final judgment in favor of Duggan for $2,597,232.50. Cornerstone paid Duggan the $25,000 Policy limit. Huchingson then filed for bankruptcy, and the Trustee filed this lawsuit in state court.

## B. *Procedural History*

The Trustee asserted three causes of action against Cornerstone: breach of contract, bad faith, and negligence. Cornerstone removed the lawsuit to federal court and moved to dismiss it. *See* Fed. R. Civ. P. 12(b)(6). The court granted the motion to dismiss as to the negligence and bad-faith claims. Both parties then filed cross-motions for summary judgment regarding the breach-of-contract claim.

Applying Arkansas breach-of-contract law, the district court granted Cornerstone's motion for summary judgment. The Trustee made three arguments to the court. First, he argued that the Policy provision, requiring Huchingson to "[p]romptly send [Cornerstone] copies of any notices or legal papers," was a cooperation clause, not a notice provision. Appellant's Add. at 12. Thus, according to the Trustee, any failure by Huchingson to send the complaint to Cornerstone was immaterial. The district court rejected the Trustee's argument and concluded that under Arkansas law the Policy provision was a notice requirement.

Second, the Trustee contended that even if that specific Policy provision was not a cooperation clause, Huchingson complied with the requirement. The court again disagreed, explaining that Huchingson "never informed the representative on the phone call that he had been served with process" and that was "insufficient [notice] to inform [Cornerstone] that a lawsuit had been filed." *Dowden*, 2020 WL 2770422, at *4. "Moreover, [Huchingson] was required to strictly comply with the notice requirement, which included promptly providing [Cornerstone] with copies of any legal papers connected to an accident or loss." *Id.* There was "no dispute that he did not promptly send these documents." *Id.*

Lastly, the Trustee argued that Cornerstone "should be estopped from denying coverage" because Parton told Huchingson that Cornerstone would likely get a copy of the police report but that if Huchingson was "required to send anything in[,] they'[d] let [him] know how to do it." *Id.* The district court noted that Huchingson did not support this argument with any law. It also put Parton's statement in context, explaining that it was in response to Huchingson's question about a *police report*. Ultimately, it "c[ould not] find that [Cornerstone] should be estopped from denying coverage based on the aforementioned statement when [Cornerstone] had no knowledge of [Huchingson] having been served with a summons and complaint." *Id.* (citing *Ramey v. State Farm Mut. Auto. Ins.*, 924 S.W.2d 835, 836–37 (Ark. Ct. App. 1996) ("As a general rule, there can be no waiver of an insured's noncompliance with such a provision where the insurer does not have knowledge of all the material facts.")).

The district court concluded, Huchingson "failed to comply with a condition precedent to coverage," and Cornerstone "had no duty to defend or indemnify" Huchingson. *Id.* Accordingly, the court found that summary judgment in favor of Cornerstone was proper and dismissed the case with prejudice.

## II. *Discussion*

On appeal, the Trustee argues that we should reverse the district court's grant of summary judgment in favor of Cornerstone and its denial of his motion for summary judgment.[2] We decline to do so and affirm.

We review the grant of summary judgment de novo. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). Summary judgment is appropriate when the movant shows that there is no genuine dispute regarding any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). When reviewing the record, we view the facts in the light most favorable to the non-moving party. *Torgerson*, 643 F.3d at 1042. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). If, taking the record as a whole, a reasonable fact finder could not find for the nonmovant, there is no genuine issue for trial. *Id.* "The nonmovant 'must do more than simply show that there is some metaphysical doubt as to the material facts,'" but must provide "specific facts showing that there is a genuine issue." *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)). "We also review the district court's construction of an insurance policy and interpretation of state law de novo." *Pine Bluff Sch. Dist. v. Ace Am. Ins.*, 984 F.3d 583, 590 (8th Cir. 2020) (quoting *Russell v. Liberty Ins. Underwriters, Inc.*, 950 F.3d 997, 1003 (8th Cir. 2020)).

---

[2]Alternatively, the Trustee asks us to "reverse the ruling granting Cornerstone's [m]otion, . . . vacate the judgment dismissing Dowden's complaint with prejudice, and . . . remand . . . to allow the factual issues . . . to be determined by the jury." Appellant's Br. at 15–16. Because we affirm the court's grant of Cornerstone's motion for summary judgment, we do not address the Trustee's alternative argument.

A. *Whether the Duty to Send Legal Papers Is a Cooperation Clause*

Cornerstone asks us to affirm because it had no duty to defend or indemnify Huchingson in the Duggan lawsuit. Cornerstone asserts that Huchingson was required to strictly comply with the Policy provision mandating that he promptly forward the legal papers he received to Cornerstone and that he did not.

The Trustee, in reply, argues that the legal-document-forwarding obligation did not require strict compliance. He contends, instead, that it was a part of Huchingson's duty to cooperate. Therefore, Cornerstone bore the burden of proving that (1) Huchingson failed to cooperate, (2) Huchingson lacked a good reason for not cooperating, and (3) Cornerstone was prejudiced by Huchingson's failure cooperate. *See Spore v. GEICO Indem. Co.*, 497 S.W.3d 704, 709 (Ark. Ct. App. 2016) ("To deny coverage based on its insured's breach of a cooperation clause, the insurer bears the burden of proving three things. First, the insurer must prove that it exercised due diligence to locate the insured or to find the reason for their absence. Second, the insurer must prove that the insured's lack of cooperation was deliberate or without good reason. Finally, the insurer must prove that it suffered prejudice due to its insured's failure to cooperate." (cleaned up)).

Applying Arkansas law,[3] we disagree with the Trustee that the provision requiring Huchingson to "[p]romptly send [Cornerstone] copies of any notices or legal papers," Appellant's Add. at 12, is a part of a cooperation clause in the contract and not a condition precedent to coverage.

---

[3]*See Kimbrell v. Union Standard Ins.*, 207 F.3d 535, 536 (8th Cir. 2000).

"Insurance contracts are to be construed strictly against the insurer, but where language is unambiguous, and only one reasonable interpretation is possible, it is the duty of the courts to give effect to the plain wording of the policy." *Smith v. S. Farm Bureau Cas. Ins.*, 114 S.W.3d 205, 206 (Ark. 2003). "The court resolves as a matter of law whether a policy's language is ambiguous." *Pine Bluff*, 984 F.3d at 590. We must construe the language "in its plain, ordinary, and popular sense." *Id.* (quoting *McGrew v. Farm Bureau Mut. Ins. Co. of Ark.*, 268 S.W.3d 890, 895 (Ark. 2007)). "Contracts of insurance should receive a practical, reasonable, and fair interpretation consonant with the apparent object and intent of the parties in light of their general object and purpose." *Dardanelle & Russellville R.R. v. Certain Underwriters at Lloyd's*, 379 S.W.3d 734, 742 (Ark. Ct. App. 2010). "The different clauses of a contract must be read together, and the contract should be construed so that all parts harmonize." *Vaughn v. Shelter Mut. Ins.*, 382 S.W.3d 736, 740 (Ark. Ct. App. 2011).

The Trustee asserts that paragraph B of Part G, including the requirement to forward legal documents, should be construed as a cooperation clause. He argues that paragraph A is clearly a notice clause and "[t]he substance of paragraph B . . . [is] clearly a cooperation clause" and that "[t]he first sentence of paragraph B expressly requires the insured's cooperation, and the substance of the following sentences in that paragraph essentially set[s] forth specific circumstances which require the insured's cooperation." Appellant's Br. at 31 (citing *City of New York v. Cont'l Cas. Co.*, 27 A.D.3d 28 (N.Y. App. Div. 2005)).

Language in the relevant policy provision in *Continental* is similar to the provision here.[4] But this New York state court decision applying New York law is not binding on this court, nor are we persuaded by its analysis.

Paragraph B is not a cooperation clause. Paragraph B provides a list of five items that "[a] person seeking any coverage must" perform—only one of which is the duty to cooperate. Appellant's Add. at 12. "A colon introduces an element or series of elements illustrating or amplifying what has preceded the colon." *The Chicago Manual of Style* ¶ 6.61 (17th ed. 2017). Here, the phrase "[a] person seeking any

---

[4]The *Continental* policy provided:

2. Duties in the Event of Accident, Suit, Claim Or Loss.

b. Additionally, you and any other involved "insured" must:

(1) Assume no obligation, make no payment or incur no expense without our consent, except at "insured's" own cost.

(2) Immediately send us copies of any demand, notice, summons, or legal paper concerning the claim or "suit[."]

(3) Cooperate with us in the investigation, settlement or defense of the claim or "suit[."]

(4) Authorize us to obtain medical records or other pertinent information.

(5) Submit to examination at our expense, by physicians of our choice, as often as we reasonably require.

Affirmation of Jody M Tawfik in Supp. of Def.'s Opp'n to Pl.'s Mot. for Summ. J. ¶ 10, *City of New York v. Cont'l Cas. Co.*, 27 A.D.3d 28 (N.Y. App. Div. 2005), No. 401841/03, 2003 WL 25569553.

coverage must" precedes the colon. Thus, each listed item "illustrat[es]" what "[a] person seeking any coverage must" do. For example, under the Policy, "A person seeking any coverage must: . . . Promptly send [Cornerstone] copies of any notices or legal papers received in connection with the accident or loss." Appellant's Add. at 12. Construing the Policy in accordance with its plain meaning, the Policy places five independent duties on the insured, one of which is to promptly forward legal papers.

Arkansas law mandates strict compliance with the duty to forward legal papers so long as that duty constitutes a condition precedent to a policy's coverage. *See Fireman's Fund Ins. v. Care Mgmt., Inc.*, 361 S.W.3d 800, 803, 805 (Ark. 2010), *opinion after certified question answered*, No. 1:08-CV-00056 JLH, 2010 WL 1417932 (E.D. Ark. Apr. 6, 2010) (explaining that "it is well-settled law in Arkansas that an insured must strictly comply with an insurance-policy provision requiring timely notice where that provision is a condition precedent to recovery" and that the Arkansas Supreme Court "ha[s] not required a showing of prejudice when the insured failed to comply with conditions precedent *other* than notice" (emphasis added) (citing *Vill. Mkt., Inc. v. State Farm Gen. Ins.*, 970 S.W.2d 243, 245–47 (Ark. 1998) (holding that a policy provision requiring an insured to retain damaged property was a condition precedent to recovery and that the insurance company was automatically entitled to summary judgment because the insured had not retained the damaged property))).[5]

Here, the duty to promptly forward legal documents to Cornerstone, in its place in the Policy, functions as a condition precedent to recovery. A condition precedent to recovery must either be express or "fairly implied from the language of the contract

---

[5] *Cf.* Steven Plitt et al., 6 *Couch on Ins.* § 83:26 (3d ed. 2021) ("The parties to a contract of insurance may insert in the contract any binding conditions as they choose, provided that they are not contrary to law or public policy, even if the conditions are harsh and onerous." (footnote omitted)).

that the provision was intended as a condition precedent to the right to recover." *Hope Spoke Co. v. Md. Cas. Co.*, 143 S.W. 85, 86 (Ark. 1912); *accord Clark v. S. Farm Bureau Cas. Ins.*, 487 S.W.3d 402, 404 (Ark. Ct. App. 2016). Arkansas law does not require that "the specific words 'conditions precedent' [be] used in the policy." *M.F.A. Mut. Ins. v. Mullin*, 156 F. Supp. 445, 461 (W.D. Ark. 1957); *see AIG Centennial Ins. v. Fraley-Landers*, 450 F.3d 761, 764–65 (8th Cir. 2006) (citing *Mullin*'s analysis of Arkansas law with approval).

The Policy states, "We have no duty to provide coverage under this policy unless there has been full compliance with the following duties," including the duty to "[p]romptly send [Cornerstone] copies of any notices or legal papers received in connection with the accident or loss." Appellant's Add. at 12. The Policy also explains, "No legal action may be brought against us until there has been full compliance with all the terms of this policy." *Id.* at 13.[6]

In *Kimbrell*, a liability insurance policy required, among other things, that an insured seeking coverage for a claim do two things: (1) provide the insurer prompt notice of the accident and (2) immediately forward to the insurer "copies of any request, demand, order, notice, summons or legal paper[s] received concerning the claim." 207 F.3d at 536–37. We held that these were conditions precedent to recovery, requiring the insured's strict compliance under Arkansas law. *Id.* at 537.

---

[6]*Cf. Am. Railcar Indus., Inc. v. Hartford Ins. Co. of the Midwest*, 847 F.3d 970, 973 (8th Cir. 2017) (applying Arkansas law) (holding that the duty to promptly forward legal papers to the insurer was a condition precedent to recovery because the policy provided that the insured would "not have a cause of action against [the insurer] unless [the insured] complie[d] with all of the policy's terms"); *Vaughn*, 382 S.W.3d at 741 (explaining that the insurer would have to show that it was prejudiced by the insured's failure to forward legal papers because "the plain wording of the policy does not condition coverage on fulfilling this condition[,] . . . . in stark contrast to the previously discussed condition precedent associated with the requirement to give notice of a tentative settlement").

"Even assuming" that the insured provided "'prompt notice' of the 'accident,'" the insured "failed to comply with the provision requiring him to forward the lawsuit papers to [the insurer] in a timely manner." *Id.* Thus, an entry of judgment in favor of the insurer was proper. *Id.* at 538.

Here, the Trustee's argument that "Huchingson fulfilled all requirements under the Policy," Appellant's Br. at 35, fails because Huchingson did not promptly forward the complaint and summons to Cornerstone.[7]

## B. *Waiver and Estoppel*

Dowden alternatively argues that, even if we hold that Huchingson did not strictly comply with the Policy, summary judgment was inappropriate because Cornerstone has waived the defense of noncoverage and should be estopped from asserting it. Assuming that Parton was authorized to waive the Policy conditions,[8] we hold that her actions did not waive the Policy's requirement that Huchingson promptly forward any legal papers to Cornerstone, nor did they estop Cornerstone from denying coverage based on noncompliance.

Dowden's arguments for waiver and estoppel are based on this exchange between Huchingson and Parton at the conclusion of their call:

> [Huchingson]: . . . Are they gonna get the police report or . . . do I need to send one or?

---

[7]Though Huchingson eventually forwarded the legal documents, the Trustee does not argue that Huchingson did so promptly. Rather, he argues that Cornerstone has not shown that Huchingson failed to cooperate with the Policy.

[8]"[A]bsent apparent authority, a soliciting agent can neither bind the insurer by waiver or estoppel." *Jackson v. M.F.A. Mut. Ins.*, 169 F. Supp. 638, 644 (W.D. Ark. 1959).

-13-

[Parton]: I believe that your representative is gonna go ahead and get it. Their own copy of the police report. But if you are required to send anything in they'll let you know how to do it.

Appellant's Add. at 24.

"[W]aiver and estoppel, although often used interchangeably in insurance law, are not synonymous." *Kimbrell*, 207 F.3d at 538. Waiver requires the insured "to show that [the insurer] intentionally relinquished a known right." *Id.* (citing *Bethell v. Bethell*, 597 S.W.2d 576, 581 (Ark. 1980)). Waiver "may occur when one, with full knowledge of material facts, does something which is inconsistent with the right or his intention to rely upon the right." *Bethell*, 597 S.W.2d at 581 (quoting *Cont'l Ins. v. Stanley*, 569 S.W.2d 653, 656 (Ark. 1978)). Unlike estoppel, "[i]t contemplates something done designedly or knowingly, which modifies or changes existing rights, or varies or changes the terms and provisions of a contract." *Id.* (quoting *Cont'l Ins.*, 569 S.W.2d at 656).

Here, Parton was responding to Huchingson's question about a police report; Huchingson never informed Parton that he had received a complaint and summons. Thus, Parton did not waive the Policy provision requiring that Huchingson send any *complaints* to Cornerstone by telling Huchingson that she believed his representative would get a copy of a *police report*. Parton explained that Huchingson's representative could "let [him] know how" to send in documents, Appellant's Add. at 24; she did not tell Huchingson that he did not need to forward any complaint and summons he received.

The Trustee argues next that Cornerstone should be estopped from denying coverage.

-14-

While "[w]aiver is the voluntary surrender of a right," estoppel is the restriction from asserting it due to one's actions. *Bethell*, 597 S.W.2d at 581 (quoting *Cont'l Ins.*, 569 S.W.2d at 656). "[E]stoppel always involves" one of the parties being "misled to his prejudice, or into an altered position." *See id.* at 581–82 (quoting *Cont'l Ins.*, 569 S.W.2d at 656). It arises when, "by the fault of one party, another has been induced, ignorantly or innocently, to change his position for the worse in such manner that it would operate as a virtual fraud upon him to allow the party by whom he has been misled to assert the right in controversy." *Id.* at 582 (quoting *Cont'l Ins.*, 569 S.W.2d at 656). "The party seeking estoppel has the burden to prove that the party to be estopped knew the facts and intended that the conduct be acted on or acted so that the party asserting the estoppel had a right to believe that it was so intended . . . ." *Design Pros. Ins. v. Chi. Ins. Co.*, 454 F.3d 906, 912–13 (8th Cir. 2006) (applying Arkansas law). In addition, the asserting party must show that he "was ignorant of the facts, relied on the other's conduct, and was injured because of that reliance." *Id.* at 913.

The district court rejected the Trustee's argument because Cornerstone "had no knowledge of [Huchingson] having been served with a summons and complaint." *Dowden*, 2020 WL 2770422, at *4 (citing *Ramey*, 924 S.W.2d at 836–37 ("As a general rule, there can be no waiver of an insured's noncompliance with such a provision where the insurer does not have knowledge of all the material facts.")).

Based on the undisputed record, the district court likely erred in its statement that Cornerstone had no knowledge that Huchingson had been served with a summons and complaint.[9] Nonetheless, we affirm because no reasonable fact finder could find that Huchingson "had a right to believe that" Parton intended for

---

[9]In the report that Parton forwarded to Cornerstone, Parton included, "The other party is suing the insured for the accident, including medical expenses, pain and suffering and possibly the vehicle." Appellant's Add. at 14. Accordingly, Cornerstone had knowledge of the fact that Huchingson had been sued.

-15-

Huchingson to not forward the complaint and summons to Cornerstone contrary to the Policy. *Design Pros.*, 454 F.3d at 913; *cf. Quinn v. St. Louis Cnty.*, 653 F.3d 745, 752 (8th Cir. 2011).

Because the Trustee's waiver and estoppel arguments fail, and because Huchingson failed to strictly comply with the Policy, summary judgment in favor of Cornerstone was proper.

## III. *Conclusion*

For these reasons, we affirm the district court's grant of Cornerstone's motion for summary judgment and denial of the Trustee's motion for summary judgment.

_____