

# SUPREME COURT OF ARKANSAS

No. CV-13-42

| | |
|---|---|
| OPAL CORN AND L.B. CORN<br>APPELLANTS | **Opinion Delivered** November 7, 2013 |
| V. | APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT,<br>[NO. CV-11-353-4] |
| FARMERS INSURANCE CO., INC.<br>APPELLEE | HONORABLE G. CHADD MASON, JUDGE |
| | AFFIRMED. |

**JIM HANNAH, Chief Justice**

Appellants, Opal and L.B. Corn, pursued a claim for underinsured motorist ("UIM") coverage against their insurer, appellee Farmers Insurance Co., Inc. The circuit court granted summary judgment in favor of Farmers, finding that, based on both the exhaustion requirement of UIM coverage and the policy language, the Corns were not entitled to UIM benefits. We affirm.

On March 3, 2008, Opal was driving on Interstate 540 in Rogers, with L.B. as her passenger, when she encountered debris in the roadway. She slowed down suddenly to avoid hitting the debris and was rear-ended by a vehicle driven by Martha Gafford. The debris was later determined to have fallen off an Eden's Home Repair and Remodeling truck, which was driven by Kenneth Eden.

The Corns filed claims against Gafford. Gafford's insurer, Allstate Insurance Company, offered her policy limits of $25,000 each to Opal and L.B., and Farmers consented to the

SLIP OPINION

settlements. The Corns then filed a UIM claim with Farmers for the remaining damages from the accident. When the expiration of the statute of limitations was imminent without resolution of the UIM claim, the Corns filed suit against Farmers and Kenneth Eden and Eden's Home Repair and Remodeling (collectively referred to as "Eden"). The Corns settled their claims with Eden through mediation by accepting proceeds from an auto-liability policy issued by Eden's insurance carrier. That policy provided for $1 million of liability coverage per accident; however, the Corns' settlements with Eden were for less than the policy limits. Farmers refused to offer any UIM benefits and moved for summary judgment, contending that because the Corns had failed to exhaust Eden's liability policy, they had not triggered UIM coverage under their policy with Farmers. In support, Farmers pointed to the following language in its policy:

> We will pay under this coverage only after the limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by payment of judgments or settlements.

Farmers argued that the policy language, together with this court's holding in *Birchfield v. Nationwide Insurance*, 317 Ark. 38, 875 S.W.2d 502 (1994), required the Corns to exhaust all policies against all tortfeasors before receiving UIM benefits.

In response, the Corns contended that the modification of joint and several liability by Act 649 of 2003 invalidated the holding in *Birchfield* and, as such, in multiple-tortfeasor cases, insured persons are no longer required to exhaust all policies of all tortfeasors before receiving UIM benefits. They also argued that the policy terms allow for payment of UIM benefits after only one tortfeasor's policy has been exhausted or, alternatively, that the policy

SLIP OPINION

terms are ambiguous. In addition, the Corns argued that Farmers failed to object to the settlement with Gafford and was therefore precluded from refusing to remit UIM benefits to them. The circuit court rejected the Corns' arguments and entered summary judgment in favor of Farmers. The Corns appeal.

An appeal from an order of summary judgment typically concerns the issue of whether a material question of fact is left unanswered; however, the issues presented in this appeal involve questions of law. This court reviews questions of law de novo. *E.g.*, *Campbell v. Asbury Auto., Inc.*, 2011 Ark. 157, 381 S.W.3d 21.

The Corns first contend that the circuit court erred in granting summary judgment in favor of Farmers because, given the modification of joint and several liability in Arkansas, insured persons are no longer required to exhaust all liability insurance policies of all tortfeasors before they are entitled to receive UIM benefits. They also contend that this court's decision in *Birchfield* is invalid. Farmers responds that the modification of joint and several liability has no effect on UIM coverage and that the *Birchfield* decision is controlling.

To address the Corns' first argument, we must consider the UIM statute, our decision in *Birchfield*, and the modification of joint and several liability. We begin with the statute.

UIM coverage is governed by Arkansas Code Annotated section 23-89-209. The coverage

> shall enable the insured . . . to recover from the insurer the amount of damages for
> bodily injuries to . . . an insured which the insured is legally entitled to recover from
> the owner or operator of another motor vehicle whenever the liability insurance
> limits of the other owner or operator are less than the amount of the damages
> incurred by the insured.

SLIP OPINION

Ark. Code Ann. § 23-89-209(a)(3) (Repl. 2004). UIM coverage applies when the tortfeasor has at least the amount of insurance required by law, but not enough to fully compensate the victim. *Clampit v. State Farm Mut. Auto. Ins. Co.*, 309 Ark. 107, 109–10, 828 S.W.2d 593, 595 (1992). This coverage is designed to provide compensation to the extent of the injury, subject to the policy limit. *Id*. at 110, 828 S.W.2d at 595.

In *Birchfield*, a case involving multiple tortfeasors, this court held that the insurance policy at issue required the insured to exhaust all liability policies of all tortfeasors before receiving UIM benefits. 317 Ark. at 40–42, 875 S.W.2d at 503–04. Stephen Birchfield, a minor, was injured while riding as a passenger in a vehicle involved in an accident. *Id*. at 39, 875 S.W.2d at 503. He subsequently filed a joint lawsuit against two tortfeasors—the driver of the car in which he was riding and the driver of the other vehicle involved in the accident. *Id*., 875 S.W.2d at 503. The combined limits of the two tortfeasors' policies was $125,000, and Birchfield claimed damages of $250,000. *Id*., 875 S.W.2d at 503. At the time of the accident, Birchfield had UIM coverage under a policy that Nationwide Insurance had issued to his mother. *Id*., 875 S.W.2d at 503. The policy limited underinsurance coverage as follows:

> No payment will be made until the limits of all other liability insurance and bonds that apply have been exhausted by payments.

*Id*., 875 S.W.2d at 503.

Birchfield settled with the tortfeasors' insurance companies for $75,000, which was less than their combined policy limits of $125,000. *Id*., 875 S.W.2d at 503. He claimed that because his injuries resulted in damages of $250,000—an amount greater than the combined



policy limits of the tortfeasors—Nationwide should honor his claim for UIM benefits. *Id.*, 875 S.W.2d at 503. Nationwide denied Birchfield's claim and moved for summary judgment, contending that because Birchfield had settled with the tortfeasors for less than their policy limits, he was not entitled to UIM benefits. *Id.*, 875 S.W.2d at 503. Birchfield claimed that the language in the policy, which purported to deny coverage unless the limits of all other liability insurance that applied had been "exhausted by payments," was ambiguous. *Id.*, 875 S.W.2d at 503. We disagreed, holding that the plain meaning of the language "exhausted by payments" regarding limits of other liability insurance was that all other available liability insurance had to be paid in full before Birchfield was entitled to receive UIM benefits from Nationwide. *Id.*, 875 S.W.2d at 503. We also rejected Birchfield's argument that it was against public policy to allow Nationwide to avoid paying UIM benefits in a case where the insured had settled with the tortfeasors' carriers for less than the tortfeasors' policy limits. *Id.* at 40–41, 875 S.W.2d at 504. Birchfield argued that, even if he had fully exhausted both tortfeasors' policies, his damages would have exceeded their coverage, and that fact should trigger coverage, not exhaustion. *Id.* at 41, 875 S.W.2d at 504. This court disagreed, noting that UIM benefits are recoverable from the owner or operator of another motor vehicle whenever the insurance limits of such other owner or operator are less than the amount of damages incurred by the insured. *Id.*, 875 S.W.2d at 504. We reiterated in *Hartford Insurance Co. v. Mullinax*, 336 Ark. 335, 341, 984 S.W.2d 812, 815 (1999), that the *Birchfield* decision stood for the proposition "that the *limits* of the liability coverage from the tortfeasors must be paid in full before the insured is entitled to underinsurance benefits."



The Corns contend that the complete-exhaustion requirement announced in *Birchfield* was based on the applicability of joint and several liability and that, because the legislature has modified joint and several liability, *Birchfield* is not controlling and complete exhaustion is no longer required. In Arkansas, judicial recognition of the common-law doctrine of joint and several liability dates back to at least 1895. *See* Robert B Leflar, *The Civil Justice Reform Act and the Empty Chair*, 2003 Ark. L. Notes 67, 69 (citing *City Elec. St.-Ry. Co. v. Conery*, 61 Ark. 381, 33 S.W. 426 (1895); *Van Troop v. Dew*, 150 Ark. 560, 234 S.W. 922 (1921); and *Applegate v. Riggall*, 229 Ark. 773, 318 S.W.2d 596 (1958)) (stating that *Van Troop* and *Applegate* explain that joint and several liability is not confined to tortfeasors acting in concert). Under joint and several liability, "where concurrent negligent acts result in a single injury, each tortfeasor is jointly and severally liable, and a plaintiff can institute an action against any or all tortfeasors, individually or jointly." *Woodward v. Blythe*, 249 Ark. 793, 801–02, 462 S.W.2d 205, 210 (1971). "Where there are joint defendants and a judgment is against them jointly, . . . all or any one of such defendants is liable to the plaintiff for the entire judgment." *Dunaway v. Troutt*, 232 Ark. 615, 623, 339 S.W.2d 613, 618 (1960), *overruled on other grounds by United Ins. Co. of Am. v. Murphy*, 331 Ark. 364, 961 S.W.2d 752 (1998). In 2003, the General Assembly modified joint and several liability, making the liability of defendants in personal injury, medical injury, property damage, or wrongful-death cases several only, rather than joint. *See* Civil Justice Reform Act of 2003, No. 649, § 1, 2003 Ark. Acts 2130, codified at Ark. Code Ann. § 16-55-201(a) (Repl. 2005). Accordingly, "[e]ach defendant shall be liable only for the amount of damages allocated to that defendant



in direct proportion to that defendant's percentage of fault," and "[a] separate several judgment shall be rendered against that defendant for that amount." Ark. Code Ann. § 16-55-201(b).

The Corns assert that, because liability is now apportioned between multiple tortfeasors and each tortfeasor is liable only for the amount of damages allocated to him or her, it is no longer logical to require exhaustion of all liability policies in multiple-tortfeasor cases and doing so guts UIM coverage in those cases. They contend that because joint and several liability has been modified, it is against the public policy of this state to require insured persons to exhaust all liability policies before they are entitled to receive UIM benefits. This contention is problematic because the Corns have failed to demonstrate that the public policy underlying UIM coverage has changed since our decision in *Birchfield*.[1]

In *Birchfield*, we reviewed the legislative intent of the UIM statute in effect at the time of the accident, *see* Ark. Code Ann. § 23-89-209(a) (1987), as well as an amended version of the statute, *see* Ark. Code Ann. § 23-89-209(a)(3) (1993),[2] and held that the legislature had established that the public policy of this state is to require that the limits of the liability coverage from all tortfeasors be paid in full before the insured is entitled to underinsurance benefits. 317 Ark. at 41–42, 875 S.W.2d at 504. It is well settled that any interpretation of a statute by this court subsequently becomes a part of the statute itself. *E.g.*, *Pifer v. Single*

---

[1]We note that there is no discussion of joint and several liability in *Birchfield*.

[2]The current version of section 23-89-209(a)(3) is identical to the 1993 version of section 23-89-209(a)(3).



*Source Transp.*, 347 Ark. 851, 69 S.W.3d 1 (2002). The General Assembly is presumed to be familiar with this court's interpretations of its statutes, and if it disagrees with those interpretations, it can amend the statutes. *Id*. Without such amendments, however, our interpretations of the statutes remain the law. *Id*. Although aware of this court's interpretation of the public policy underlying the UIM statute, the General Assembly has not amended that statute. Specifically, the General Assembly did not amend the UIM statute when it enacted section 16-55-201, which modified joint and several liability. In construing a statute, we will presume that the General Assembly, in enacting it, possessed the full knowledge of the scope of its powers, full knowledge of prior legislation on the same subject, and full knowledge of judicial decisions under preexisting law. *See, e.g.*, *Bunch v. State*, 344 Ark. 730, 43 S.W.3d 132 (2001). We do not make light of the Corns' contention that, given the modification of joint and several liability, it is unreasonable to require exhaustion of all liability policies in a multiple-tortfeasor case before UIM coverage is triggered. But the statutes at issue do not appear to contemplate the Corns' contention. We do not know if this was a legislative oversight or whether it was the General Assembly's intent that the joint-and-several-liability modification statute have no effect on UIM coverage. In any event, the Corns' contention implicates many public-policy concerns, and public policy is for the General Assembly to establish, not the courts. *E.g.*, *Carmody v. Raymond James Fin. Servs., Inc.*, 373 Ark. 79, 281 S.W.3d 721 (2008). With this in mind, we strongly encourage the General Assembly to revisit the UIM statute and the joint-and-several-liability modification statute to address the

issues involved in the instant case and those that have not evolved but will likely evolve.[3]

The Corns next contend that the circuit court erred in granting summary judgment because their insurance policy does not require complete exhaustion of all liability policies. Alternatively, they contend that the policy language is ambiguous and should be construed in their favor.

Insurance terms must be expressed in clear and unambiguous language. *Castaneda v. Progressive Classic Ins. Co.*, 357 Ark. 345, 351, 166 S.W.3d 556, 560 (2004). If the language of the policy is unambiguous, we will give effect to the plain language of the policy without resorting to the rules of construction. *Id.*, 166 S.W.3d at 560. On the other hand, if the language is ambiguous, we will construe the policy liberally in favor of the insured and strictly against the insurer. *Id.*, 166 S.W.3d at 560–61. Language is ambiguous if there is doubt or uncertainty as to its meaning and it is fairly susceptible to more than one reasonable interpretation. *Id.*, 166 S.W.3d at 561. Whether the language of the policy is ambiguous is a question of law to be resolved by the court. *Id.*, 166 S.W.3d at 561. The terms of an insurance contract are not to be rewritten under the rule of strict construction against the company issuing it so as to bind the insurer to a risk which is plainly excluded and for which it was not paid. *Id.*, 166 S.W.3d at 561.

---

[3]We are mindful that the obligation to pay underinsurance benefits cannot be triggered until it is determined whether the insured is in fact underinsured. *Hartford Ins. Co. v. Mullinax*, 336 Ark. 335, 341, 984 S.W.2d 812, 815 (1999). That necessarily entails knowing the extent of the insured's damages and the liability benefits that have been paid by the tortfeasor's carrier. *Id.*, 984 S.W.2d at 815. While the Corns have not submitted proof of their total amount of damages, we have assumed, for the purposes of our discussion, that Gafford was underinsured.

SLIP OPINION

At issue is the meaning of "any" in the following policy language:

We will pay under this coverage only after the limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by payment of judgments or settlements.

The Corns contend that the use of "any" means that UIM coverage is available if even one policy has paid out its limits and, as such, UIM coverage is available to them because Gafford's policy paid out its limits. Alternatively, they contend that "any" is ambiguous. Farmers contends that, in this policy, "any" means "all" and, therefore, all policies must be exhausted before UIM coverage is triggered.

The "[w]ord 'any' has a diversity of meaning and may be employed to indicate 'all' or 'every' as well as 'some' or 'one' and its meaning . . . depends upon the context and subject matter." *Black's Law Dictionary* 86 (5th ed. 1979); *see, e.g.*, *State v. Gray*, 322 Ark. 301, 306, 908 S.W.2d 642, 645 (1995) (construing "any" in the phrase "any other property" as used in forfeiture statute to mean "all," "every," or "of every kind"). "It is often synonymous with 'either,' 'every,' or 'all,'" and "[i]ts generality may be restricted by the context." *Black's Law Dictionary* 86; *see, e.g.*, *Freeo Valley R.R. Co. v. Hodges*, 105 Ark. 314, 317, 151 S.W.2d 281, 282 (1912) (concluding that statute allowing "any corporation" to surrender its charter without the consent of the state did not apply to each and every corporation, specifically, a railroad corporation, due to limiting words in the statute).

In this case, when read within the context of the policy, it is clear that the word "any" means "all" and not "one" as the Corns contend. "Any" modifies the plural words "bonds" and "policies," signifying that "any" is not used to restrict exhaustion of the limits to only

SLIP OPINION

one bond or policy. We conclude that the policy language is not ambiguous and that, under the terms of the policy, UIM coverage is not triggered until all policy limits have been exhausted.

Finally, the Corns contend that, because Farmers consented to the settlement with Gafford, it waived its ability to object to any settlement with Eden and the right to withhold UIM benefits. Here, although the Corns filed their suit against Farmers and Eden after they had settled with Gafford, they contend that Farmers "knew of the possibility of a recovery from Eden" when they settled with Gafford and, therefore, Farmers "should have objected to the settlement with Gafford if it intended to require complete exhaustion." The Corns cite no authority in support of this proposition, however, and it is well settled that this court will not consider arguments advanced without citation to convincing authority. *E.g.*, *Matsukis v. Joy*, 2010 Ark. 403, 377 S.W.3d 245.

Affirmed.

HART and HOOFMAN, JJ., dissent.

**CLIFF HOOFMAN, Justice, dissenting.** I must respectfully dissent from the majority's decision to affirm this case. I agree with the Corns that complete exhaustion of all tortfeasors' liability-insurance policies should no longer be required after the enactment of the Civil Justice Reform Act of 2003 (CJRA) (Ark. Code Ann. §§ 16-55-101 et. seq.), which abolished joint and several liability. Our holding in *Birchfield v. Nationwide Ins.*, 317 Ark. 38, 875 S.W.2d 502 (1994), was consistent with the purpose behind the underinsured motorist (UIM) statute under the law in effect at that time because under joint and several liability, the



policy limit of each and every tortfeasor's liability-insurance policy was available to satisfy the damages claimed by the insured, regardless of each tortfeasor's share of fault. However, under the CJRA, each defendant is liable only for the amount of damages allocated to that defendant in direct proportion to that defendant's percentage of fault. Ark. Code Ann. § 16-55-201(b)(1) (Repl. 2005). To require complete exhaustion of all policies in a multiple tortfeasor case in the absence of joint and several liability would, in many cases, completely eviscerate the UIM coverage established by statute. *See Hill v. Am. Family Mut. Ins. Co.*, 249 P.3d 812 (Idaho 2011) (noting that the claimant might not be able to fully exhaust one of the tortfeasors' policy limits if that tortfeasor was less liable relative to the other defendants); *Colonial Penn. Ins. Co. v. Salti*, 84 A.D.2d 350 (N.Y. App. Div. 1982) (requiring the insured to exhaust all insurance applicable to all vehicles involved in an accident would emasculate the intended effect of UIM coverage).

The inequity that arises with UIM coverage in such multiple-tortfeasor situations can be demonstrated by the following illustration: assume Tortfeasor A has a liability-insurance policy of $25,000 and is attributed 95% of the fault for the accident, while Tortfeasor B has a policy limit of $1 million and is attributed 5% of the fault. In this situation, Tortfeasor A is grossly underinsured, but Tortfeasor B is not underinsured at all. If the insured suffers damages from the accident in an amount less than $1 million, UIM coverage will never be triggered because it will be impossible to fully exhaust the policy limits of both tortfeasors, and the insured will not be adequately compensated for his or her damages. Prior to the abolition of joint and several liability, the result in such cases was not inequitable because the entire



insurance policy of Tortfeasor B was available to reimburse the insured.

The majority recognizes the Corns' argument that it is unreasonable to require complete exhaustion of all liability policies in a multiple-tortfeasor case, given the abolition of joint and several liability, but states that this is a matter of public policy for the General Assembly to address by revisiting the statutes involved. I disagree, as there is no need for the UIM statute to be revised in order to reach the conclusion argued by the Corns. Arkansas Code Annotated section § 23-89-209(a)(3) (Repl. 2004) states that

> [t]he coverage shall enable the insured or the insured's legal representative to recover from the insurer the amount of damages for bodily injuries to or death of an insured which the insured is *legally entitled* to recover from *the owner or operator* of another motor vehicle whenever the liability insurance limits of *the other owner or operator* are less than the amount of the damages incurred by the insured.

(Emphasis added.) The insurance policy at issue in this case also states under the section on UIM coverage that "[w]e will pay all sums which an insured person is *legally entitled* to recover as damages from *the owner or operator* of an uninsured motor vehicle because of bodily injury sustained by the injured person." (Emphasis added.) Under the CJRA, the insured is now legally entitled to recover only the damages attributable to each tortfeasor based on his or her share of apportioned fault. Thus, in multiple-tortfeasor cases such as this one, each tortfeasor's liability-coverage limit must be compared separately to the injured person's UIM coverage in order to determine whether UIM benefits are owed, and this is consistent with the language in the UIM statute. *See Stafford v. State Farm Mut. Auto. Ins. Co.*, 1 P.3d 924 (Kan. App. 2000).

For the reasons stated above, I agree with the Corns that *Birchfield* is not controlling

of this case, given the abolition of joint and several liability, and I would therefore reverse the

circuit court's grant of summary judgment to Farmers.

HART, J., joins in this dissent.

*Taylor King & Associates, PA*, by: *Richard Bright*; and
*Brian G. Brooks, Attorney at Law, PLLC*, by: *Brian G. Brooks*, for appellants.

*Robinson Law Firm, LLC*, by: *Jon Robinson*, for appellee.