Cite as 2022 Ark. App. 67

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV–21–1

| | | |
|---|---|---|
| TRAVIS QUINN | | **Opinion Delivered** February 9, 2022 |
| | APPELLANT | |
| V. | | APPEAL FROM THE MONTGOMERY COUNTY CIRCUIT COURT [NO. 49CV-19-37] |
| THE TRAVELERS INDEMNITY COMPANY AND TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA | | HONORABLE JERRY RYAN, JUDGE |
| | APPELLEES | AFFIRMED |

## KENNETH S. HIXSON, Judge

Appellant Travis Quinn, who was injured in an accident involving a logging truck, appeals from an order granting summary judgment in favor of appellees The Travelers Indemnity Company and Travelers Property Casualty Company of America (Travelers). The trial court found that a commercial liability insurance policy issued by Travelers providing primary coverage to its named insured, Deltic Timber Corporation (Deltic), did not provide coverage for an independent contractor or its truck driver. We affirm.

### I. *Facts and Procedural History*

Travelers issued a commercial liability insurance policy to Deltic for a policy period of December 31, 2015, to December 31, 2016. On November 7, 2016, Deltic entered into a "Timber Cutting and Hauling Agreement" (sometimes referred to herein as "the Logging Agreement") with J.W. Hendrix Logging (Hendrix Logging). Under the terms of the

Logging Agreement, Hendrix Logging agreed to cut and remove timber from land owned by Deltic and deliver it to Deltic's mill. Under the heading "Independent Contractor," the Logging Agreement provided, "Contractor [Hendrix Logging] agrees that it shall, at all times and for all purposes, be an independent contractor under this Logging Agreement and Contractor's work, means, methods, hours, supplies, agents, employees and equipment shall not be subject to the supervision or control of Deltic."

On December 5, 2016, Kelly Alexander, a Hendrix Logging employee, was hauling logs in a logging truck owned by Hendrix Logging pursuant to Hendrix Logging's Logging Agreement with Deltic when Alexander was involved in a multivehicle accident. Appellant Travis Quinn was injured in the accident. Larry Ellis was killed in the accident. Donald Trampp was also injured.[1] The three men were in separate vehicles at the time of the accident.

The estate of Larry Ellis filed a separate wrongful-death lawsuit against Kelly Alexander, Hendrix Logging, and Deltic, alleging that Alexander was negligent and that his negligence was chargeable to both Hendrix Logging and Deltic ("the Ellis lawsuit"). Hendrix Logging and Deltic subsequently filed a third-party complaint against appellant Quinn, alleging Quinn was negligent in the operation of his vehicle, which was a proximate cause of the motor-vehicle accident. Appellant Quinn then filed a third-party complaint against Alexander, Hendrix Logging, and Deltic. Trampp was also made a party to the Ellis lawsuit. The bottom line to this litigation is that all parties to the motor-vehicle accident accused each other of negligence. After a jury trial, the jury found that Alexander and

_____

[1]Neither Ellis's estate nor Trampp are parties to the litigation herein.

2

Hendrix Logging were liable for damages to Ellis's estate, Quinn, and Trampp. The jury found that Deltic was not at fault and thus not liable for damages to any party. In the interrogatories submitted to the jury, the jury found that Hendrix Logging was an independent contractor of Deltic and that Alexander was not an independent contractor of Hendrix Logging.

In the Ellis lawsuit, the jury awarded appellant Quinn $500,000 in compensatory damages, and also awarded damages to Ellis's estate and to Trampp. The insurer for Hendrix Logging paid the $1,000,000 limit of its insurance, which was inadequate to cover all the damages. As his portion of the insurance proceeds in the Ellis lawsuit, appellant Quinn received $181,323.92. No appeal was taken regarding the apportionment of the insurance proceeds in that case.

That brings us to the litigation that is the subject of this appeal. On September 20, 2019, Quinn filed an amended complaint[2] against Travelers, seeking to recover the unpaid portion of the Ellis-lawsuit judgment as well as statutory damages. In his complaint, Quinn alleged that Alexander, the Hendrix Logging employee who drove the logging truck involved in the accident, was an insured under the Travelers insurance policy issued to Deltic. Quinn argued that Alexander was covered under the terms of the "Covered Autos Liability Coverage" section of the policy, which provides in relevant part as follows:

A. Coverage

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which the insurance applies, caused by an "accident" and resulting from ownership, maintenance or use of a covered auto.

---

[2]The amended complaint amended the original complaint only to the extent of substituting Travelers as the proper defendant.

. . . .

1. Who is an Insured

The following are "insureds:"

a. You for any covered "auto."

b. *Anyone else while using with your permission a covered "auto" you* own, *hire* or borrow except:

(1) The owner or anyone else from whom you hire or borrow a covered "auto."

This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.

. . . .

c. Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

(Emphasis added.) Quinn contended that Alexander was covered under subsection (A)(1)(b) because, at the time of the accident, Alexander was driving a vehicle hired by Deltic with Deltic's permission. In making this claim, Quinn relied on the Logging Agreement between Deltic and Alexander's employer, Hendrix Logging. Travelers filed an answer to Quinn's complaint, denying that Quinn was entitled to any relief.

On February 10, 2020, Travelers filed a motion for summary judgment, asserting that Travelers did not insure either Hendrix Logging or its employee, Alexander. Travelers argued that, under the plain and unambiguous terms of the Travelers insurance policy, there was no coverage for the judgment in the Ellis lawsuit as a matter of law. Travelers contended that because Hendrix Logging and its employee driver Alexander were independent contractors working for Deltic on the day of the accident, and because there was no separate

4

Logging Agreement between Deltic and Hendrix Logging in which Deltic hired or leased the logging truck driven by Alexander, the logging truck was not a "hired auto" under the policy.

On March 24, 2020, Quinn filed a response to Travelers' motion for summary judgment, asking that it be denied. In his response, Quinn argued that the logging truck driven by Alexander was a "covered auto" under the Travelers insurance policy and that Alexander and Hendrix Logging were both insureds. On July 21, 2020, the trial court held a hearing on Travelers' motion for summary judgment wherein each party argued its respective position.

The trial court issued a letter opinion on August 21, 2020. In the letter opinion, the trial court found that under the Logging Agreement between Deltic and Hendrix Logging it was not contemplated that any trucks, trailers, or equipment owned by Hendrix Logging would constitute a "hired" vehicle under the terms of the insurance policy issued by Travelers. The trial court stated:

> After considering all of the evidence in support of and in opposition to the motion, the court finds that Deltic did not hire the vehicle that was involved in the accident. Hendrix Logging owned his own trucks, trailers and equipment, hired his own drivers, provided his own insurance and controlled all operations of his business. Deltic did contract with Hendrix Logging to utilize the services of Hendrix Logging, which incidentally included the use of the truck which was involved in the accident. However, the cutting and hauling Logging Agreement between the parties gave no authority or control by Deltic as to which trucks or trailers or drivers that Hendrix Logging could use to haul the wood. No evidence supports a finding that Deltic leased any trucks, equipment or drivers owned by or under the control of Hendrix Logging. . . . Accordingly, Defendants are entitled to summary judgment.

5

On September 24, 2020, the trial court entered an order referencing its letter opinion wherein it had found that Travelers was entitled to summary judgment, and formally entered summary judgment and dismissed Quinn's amended complaint with prejudice.

Quinn now appeals from the summary judgment entered in favor of Travelers. Quinn argues that under the plain language in the Travelers insurance policy, Alexander was an insured under the "hired auto" provision of the policy. Quinn further argues that Hendrix Logging is also covered under the insurance policy because it is liable for the conduct of its employee, Alexander, who is an insured. Finding no error, we affirm.

## II. *Standard of Review*

Our supreme court has set forth the standard of review for summary-judgment cases as follows:

> Summary judgment should only be granted when it is clear that there are no genuine issues of material fact to be litigated, and the moving party is entitled to judgment as a matter of law. The purpose of summary judgment is not to try the issues, but to determine whether there are any issues to be tried. We no longer refer to summary judgment as a drastic remedy and now simply regard it as one of the tools in a trial court's efficiency arsenal. Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. On appellate review, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. We view the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. Our review focuses not only on the pleadings, but also on the affidavits and other documents filed by the parties.

*Harvest Rice, Inc. v. Fritz & Mertice Lehman Elevator & Dryer, Inc.*, 365 Ark. 573, 575–76, 231 S.W.3d 720, 723 (2006) (internal citations omitted).

6

### III. *Discussion and Analysis*

We begin our discussion with the standards set forth by our supreme court when reviewing insurance contracts. Insurance terms must be expressed in clear and unambiguous language. *Castaneda v. Progressive Classic Ins. Co.*, 357 Ark. 345, 166 S.W.3d 556 (2004). If the language of the policy is unambiguous, we will give effect to the plain language of the policy without resorting to the rules of construction. *Id.* On the other hand, if the language is ambiguous, we will construe the policy liberally in favor of the insured and strictly against the insurer. *Corn v. Farmers Ins. Co.*, 2013 Ark. 444, 430 S.W.3d 655. Language is ambiguous if there is doubt or uncertainty as to its meaning and it is fairly susceptible to more than one reasonable interpretation. *Id.* Whether the language of the policy is ambiguous is a question of law to be resolved by the court. *Id.* The terms of an insurance contract are not to be rewritten under the rule of strict construction against the company issuing it so as to bind the insurer to a risk that is plainly excluded and for which it was not paid. *Id.*

In determining whether the Travelers insurance policy covered the motor-vehicle accident with respect to Quinn's damages, it is necessary to review the relevant provisions of the Logging Agreement between Deltic and Hendrix Logging. Under the Logging Agreement, Hendrix Logging agreed to cut and remove timber from land owned by Deltic and deliver it to Deltic's mill. The Logging Agreement provides that Hendrix Logging "agrees that it shall, at all times and for all purposes, be an independent contractor under this Logging Agreement and Contractor's work, means, methods, hours, supplies, agents, employees and equipment shall not be subject to the supervision or control of Deltic." It

7

further provides that Hendrix Logging "agrees, at its sole cost, risk and expense, it shall provide all equipment, supplies, methods and labor necessary or desirable so that Contractor can comply with the terms of this Logging Agreement." The Logging Agreement states that Hendrix Logging "agrees that it shall provide a sufficient number of safe and operationally sound tractors, trailers, and other equipment of sufficient utility and capacity, and shall employ only licensed, insured, safe, and competent drivers to operate said equipment." The Logging Agreement required Hendrix Logging to obtain liability insurance, including commercial auto liability insurance, to protect Deltic from bodily-injury or property-damage claims that could arise from Hendrix Logging's operations. And finally, the Logging Agreement also contained an indemnity provision requiring Hendrix Logging to hold Deltic harmless against all claims and injuries resulting from Hendrix Logging's negligence.

In this appeal, Quinn does not dispute that Hendrix Logging was an independent contractor for Deltic at the time of the accident. Nevertheless, Quinn argues that this is not dispositive of the issue of coverage under the Travelers policy. The issue is whether the truck involved in the accident was "hired" by Deltic. The policy provides that an insured includes "[a]nyone else while using with your permission a covered 'auto' you . . . hire." Quinn contends that under this plain language in the policy, Deltic "hired" the truck driven by Alexander as part of the Logging Agreement between Deltic and Hendrix Logging. Quinn asserts that the Logging Agreement literally contains the word "Hauling" in its title. Quinn notes that the term "hire" is not defined in the policy and urges us to turn to the ordinary meaning of the word. According to the *Merriam-Webster* online dictionary, "hire"

means "payment for the temporary use of something." *Hire*, Merriam–Wester.com, https://www.merriam-webster.com/dictionary/hire (last visited Feb. 3, 2022), archived at https://perma.cc/3NNB-RERP. Quinn contends that this definition is broad enough to cover Deltic's Logging Agreement with Hendrix Logging for Hendrix Logging's services and the use of its equipment. Quinn further asserts that the policy could have contained an exclusion for independent contractors, but it did not.

Quinn concedes that Hendrix Logging is not an insured under the "hired auto" section of the policy because that section contains an exception for the owner from whom the auto was hired, and Hendrix Logging owned the truck involved in the accident. Quinn, however, argues that Hendrix Logging's employee, Alexander, is an insured under the "hired auto" section because he did not own the truck and there are no exceptions under that section that apply to him. Quinn then concludes that Hendrix Logging is an insured under the next section of the policy, which provides that an insured includes "[a]nyone liable for the conduct of an "insured" described above."[3]

Travelers, conversely, argues that Deltic did not "hire" the Hendrix Logging truck as a matter of law. Travelers cites *Nichols v. Farmers Insurance Co.*, 83 Ark. App. 324, 128 S.W.3d 1 (2003), where we held that the fact that a term is not defined in a policy does not automatically render it ambiguous. Travelers correctly states that the issue in this case has not been squarely addressed by the Arkansas appellate courts. Travelers, however, asserts

---

[3]We note that because the trial court concluded that the truck was not a "hired auto" under the policy, it made no ruling on whether the "owner" exception would have applied to either Hendrix Logging or Alexander. Because we are affirming the trial court's ruling that the truck was not a "hired auto," we need not discuss this either.

9

that other jurisdictions that have addressed a "hired auto" provision similar to this one have held that a vehicle is "hired" only if there is a separate contract by which the vehicle is hired or leased to the insured for the insured's exclusive use or control. Travelers argues that because there was no separate equipment-lease agreement in this case, and all the equipment—including the truck involved in the accident—was owned and under the exclusive control of Hendrix Logging and not Deltic per the terms of their Logging Agreement, there was no insurance coverage under the policy, and Travelers was properly granted summary judgment. We agree with Travelers' argument.

We find the Fifth Circuit Court of Appeals case, *Toops v. Gulf Coast Marine Inc.*, 72 F.3d 483 (5th Cir.), persuasive. In *Toops*, Dayton–Scott Equipment Company, an industrial crane-rental company, entered into an agreement with an interstate common carrier, Rig Runner, to transport a crane from Louisiana to Texas. Rig Runner hired two truck drivers, who were both independent contractors, to transport the crane parts. While the crane was in transport, one of the trucks was involved in an accident and fatally injured Richard Toops. In a wrongful-death suit, the jury found no liability on Dayton–Scott's part but found Rig Runner and the truck driver negligent and awarded $12 million in damages.

The *Toops* plaintiffs then filed suit against Dayton–Scott's insurer, seeking a declaratory judgment that Rig Runner was covered under an insurance policy issued to Dayton–Scott on the theory that the truck involved in the accident was a "hired auto." The policy language in *Toops* was similar to the language in the case at bar, and it provided:

1. WHO IS AN INSURED

The following are "insureds:"

10

(a) You for any covered "auto."

(b) Anyone else while using with your permission a covered auto you own, hire or borrow except:

. . . .

(c) Anyone liable for the conduct of an insured described above but only to the extent of that liability. However, the owner or anyone else from whom you hire or borrow a covered auto is an insured only if that auto is a trailer connected to a covered auto you own.

The federal district court found that there was coverage under the policy, but the Fifth Circuit Court of Appeals disagreed. The court of appeals stated that Toops was required to not only show that Dayton-Scott hired a "covered auto" but also show that the driver of the hired auto was under the control of Dayton-Scott. The court stated further:

The facts show that Dayton-Scott hired a licensed common carrier to provide transportation services and relied on the carrier to select and arrange for vehicles and drivers. Thus, Toops never made the connection between Rig Runner (the entity "hired") and Williams/Davidson (the drivers who drove the "auto"). Without such connection, the policy cannot be enforced and USF & G cannot be held liable for coverage.

*Toops*, 72 F.3d at 487. The *Toops* court held that for a vehicle to constitute a hired auto, there must be a separate contract by which the vehicle is hired or leased to the named insured for his exclusive use or control. Citing numerous cases, the *Toops* court stated that numerous courts have held that hiring an independent contractor will not create insurance coverage under a "hired auto" clause. Therefore, in *Toops*, the court of appeals reversed and rendered summary judgment in favor of the insurance company.

Cases in other jurisdictions have reached similar results. In *American International Underwriters Insurance Co. v. American Guarantee and Liability Insurance Co.*, 105 Cal. Rptr. 3d 64 (2010), the insured trucking company entered into an agreement engaging an

11

independent contractor for soil-hauling services, who, in turn, entered into a separate subhaul agreement with a truck driver. After an accident occurred involving the truck, a dispute arose with respect to whether there was insurance coverage under the insured trucking company's policy, which provided that an "insured" was "[a]nyone else while using with your permission a covered 'auto' you own, hire or borrow." The California appeals court held that there was no coverage and that the insurer was entitled to summary judgment. In concluding that the truck involved in the accident was not a "hired" vehicle under the policy, the appeals court stated that there were no facts indicating the trucking company's assumption of possession or control of the truck and stated that the trucking company cannot be said to have "hired" the truck merely by retaining an independent contractor to transport the soil. *See also Lewis v. Progressive Gulf Ins. Co., Inc.*, 7 So.3d 955 (Miss. App. 2009) (holding that the truck that was hauling timber for a logging company that was involved in an accident was not a "hired auto" under the logging company's insurance policy where the logging company did not hire the truck but rather hired the services of an independent-contractor hauler to haul the company's timber, which incidentally included the use of the truck); *Canal Ins. Co. v. Liberty Mut. Ins.*, 395 F. Supp. 962 (N. D. Ga. 1975) (holding that the logging truck was not a "hired automobile" under the insurance policy because there was no separate hiring contract, and the pulpwood harvesting and hauling logging agreement between the insured and the independent-contractor truck driver was a service contract requiring the driver to provide his own truck); *Huddleston v. Luther*, 897 So. 2d 887 (La. Ct. App. 2005) (holding that the logging truck

12

was not a "hired auto" where the logging company had no control over the truck itself, and the logging agreement did not involve the lease of a specific thing, i.e., the truck).

We observe that the holdings in the aforementioned cases are entirely consistent with a discussion of the issue in the legal treatise *Couch on Insurance*:

> Many automobile insurance policies expressly provide coverage for use of automobiles which are hired, leased, or rented by the insured. Such provisions usually appear in the policy itself or in a separate "hired automobiles" endorsement. If the term "hired automobile" is defined by the policy, it will typically be defined as a vehicle used under contract in behalf of the named insured provided that the vehicle is not owned by, or registered in the name of, the insured or of an employee of the named insured. Pursuant to this definition, a vehicle owned by the insured, a coinsured, or an employee of the named insured will typically not be considered a "hired vehicle" for purposes of coverage under the "hired automobile" clause. *In those situations in which there is no policy definition of this term, in order for a vehicle to constitute a "hired" automobile under this provision, there must be a separate contract by which the vehicle is hired or leased to the insured for the insured's exclusive use or control.*

6 Steven Plitt et al., *Couch on Insurance* § 118:48 (3rd ed. 2021) (emphasis added).

In the instant case, it is undisputed that Hendrix Logging was an independent contractor[4] that was hired to perform a service for Deltic, i.e., cutting and delivering wood, pursuant to the terms of the Logging Agreement. The Logging Agreement contained no provisions for the use of any specific trucks or other equipment nor was there any separate equipment agreement to that effect. As found by the trial court, Hendrix Logging owned and selected all the trucks and other equipment used to perform the contracted work; Hendrix Logging hired its own drivers and provided its own insurance; and Hendrix Logging controlled all operations necessary to complete the work. Deltic, on the other

---

[4]An independent contractor is one who contracts to do a job according to his own method and without being subject to the control of the other party, except as to the results of the work. *ConAgra Foods, Inc. v. Draper*, 372 Ark. 361, 276 S.W.3d 244 (2008).

hand, had no control or right to control any of the operations, including the trucks that were used or the drivers who drove them. The undisputed material facts compel the conclusion that the logging truck involved in the accident was not a "hired auto" under the Travelers insurance policy. Having concluded that there was no insurance coverage based on the unambiguous terms in the insurance contract as applied to the facts, we affirm the summary judgment entered in favor of Travelers.

Affirmed.

HARRISON, C.J., and KLAPPENBACH, J., agree.

*Minton Law Firm*, by: *M. Justin Minton*; and *Baker Schulze & Murphy*, by: *J.G. "Gerry" Schulze*, for appellant.

*Watts, Donovan, Tilley & Carlson, P.A.*, by: *David M. Donovan* and *Taylor N. Williams*, for appellees.