Cite as 2024 Ark. App. 440

# ARKANSAS COURT OF APPEALS
DIVISION IV
No. CV-23-152

| | |
|---|---|
| CHAD KELLEY, IN HIS CAPACITY AS JEFFERSON COUNTY CORNER AND INDIVIDUALLY | Opinion Delivered September 18, 2024 |
| | APPEAL FROM THE FAULKNER COUNTY CIRCUIT COURT [NO. 23CV-21-403] |
| APPELLANT | |
| V. | HONORABLE CHARLES E. CLAWSON III, JUDGE |
| BRYAN ADAMS, BRANDON ADAMS, AND SKYLAR WILSON | AFFIRMED |
| APPELLEES | |

**WAYMOND M. BROWN, Judge**

Appellant Chad Kelley brings this interlocutory appeal after the Faulkner County Circuit Court affirmed in part and denied in part his motion to dismiss based on immunity. Appellant argues that the circuit court erred in denying his motion to dismiss all the tort claims filed against him by appellees Bryan Adams, Brandon Adams, and Skylar Wilson.[1] We affirm.

To understand the case before us, some background information is necessary. On October 24, 2015, four friends (Skylar Wilson, Luke Baker, Carson Cook, and Austin Tate)

---

[1]Bryan is Skylar's father; Brandon is Skylar's uncle.

went to bow hunt at Prairie Wings Duck Lodge in Altheimer, Arkansas. Luke's father, Kerry Baker, gave Luke permission to take Luke's gun, a Taurus 0.38 Special Ultra Lite revolver, with him on the trip. After Carson and Austin had retired for the night, Luke attempted to play Russian roulette with the weapon and accidently shot himself in the head at close range. Carson and Austin were awakened by the gunfire and Skylar's screaming to them that Luke had accidently shot himself. The boys loaded Luke into the truck and headed to Jefferson Regional Medical Center (JRMC), which was the closest hospital to their location. While en route, a call was made to 911 to advise of the situation and inform the dispatcher that they were traveling to JRMC. Luke was pronounced dead at the hospital at 11:50 p.m. Jefferson County Deputy Coroner Kimberly Phillips was called to the hospital. Investigator Keleisha Wise and Deputies Tery Wingard and Mike Herron of the Jefferson County Sheriff's Office (JCSO) also came to the hospital. Photos were taken of Luke's body as well as the vehicle he was transported it that night. Wise reported that she "[o]bserved burn marks from what appeared to be gun powder residue on the right side of [Luke's] head." She also indicated that she "noticed a faint straight line on [Luke's] right hand and a groove impression on [his] right thumb." Wise noted that she "did not notice any signs of a struggle or any defensive wounds on [Luke's] body." Kerry made the decision to not send Luke's body to the Arkansas State Crime Laboratory (crime lab) and opted to instead have it transferred to Roller-McNutt Funeral Home in Conway, Arkansas. Photos of the lodge were subsequently taken, and Luke's gun was secured by Sergeant Vince Edwards of the JCSO.

Herron interviewed the witnesses and took written statements. The incident report authored by Herron on October 25 stated that Luke died from a suicide or natural or accidental death.

Phillips's investigation report stated that Luke died as a result of a gunshot wound to his head. She stated that the injury occurred due to a "[s]elf inflicted GSW to head." The death certificate issued on November 23, 2015, listed "GSW Head" as Luke's cause of death.

At some point, the case was reopened.[2] Luke's body was exhumed, and a private autopsy was performed on him in early September 2018. The autopsy yielded no evidence to support that Luke had died from something other than a self-inflicted gunshot wound to his head. Luke's estate and next of kin brought a complaint against appellees and others on October 23, claiming several torts committed in connection with Luke's death. On November 28, Kelley supplemented the cause of death, stating that further investigation by law enforcement and the reopening of the case was the reason for the amendment. In the supplemental document, the cause of Luke's death was still a gunshot wound to his head, but it did not state how it occurred. The complaint against appellees was amended on January 4, 2019. It included claims for wrongful death (including claims of homicide, negligence–suppliers of illegal substances, dangerous conditions, negligent entrustment, and premises liability); civil liability for damaging acts committed in the course of committing a felony; and intentional infliction of emotional distress. Kelley supplemented the cause of

[2]Evidence suggests that the case was closed in December 2019.

death a second time on July 10, 2019. He claimed that Luke's death was due to a "Non-Self-Inflicted Gunshot Wound to Head." In his description of how the injury occurred, Kelley stated, "Non-Self-Inflicted Gunshot Wound to Head–No Stippling/ Muzzle Impression or Burn Mark Leads One to Believe Distance Wound and Not Self-Inflicted." He also included an addendum consisting of notes regarding the photographs of Luke's body taken while Luke was at JRMC. Later, in a deposition in the case against appellees, Kelley admitted that there was stippling present, and he made a mistake in his July 10 supplement. Evidence also showed that Kelley's notes regarding the photographs were not his but were authored by one of the attorneys in the lawsuit against appellees. On June 22, 2021, the complaint against appellees was dismissed with prejudice due to both misconduct and abuse of the judicial process attributed to the plaintiffs in that case and some of their attorneys.

Appellees filed their initial complaint against Kelley and the other defendants on April 13, 2021. They filed an amended complaint on June 11 alleging several torts against Kelley and the other defendants, including abuse of process, civil conspiracy, negligence, fraud, FOIA violations and other torts, civil action by crime victims, and malicious prosecution. Kelley filed a motion to dismiss the first complaint on June 11, contending, among other things, that he was immune from suit. He filed a motion to dismiss the amended complaint on June 21, again contending that he was entitled to immunity and that the complaint should be dismissed on other grounds as well. Appellees timely responded to each motion to dismiss, arguing that Kelley was not immune from suit and asking the circuit court to deny Kelley's motion.

The circuit court entered an order on December 23, 2022, granting in part and denying in part Kelley's motion to dismiss the amended complaint. More specifically, the circuit court found that the causes of action for negligence, abuse of process, and malicious prosecution against Kelley should be dismissed. However, it found that the other causes of action against Kelley should be allowed to proceed. Kelley filed a timely notice of interlocutory appeal.

Kelley contends that the circuit court erred in denying his motion to dismiss all the tort claims filed against him by appellees because he is entitled to statutory immunity from suit as well as common-law qualified immunity. We review this issue de novo because entitlement to immunity from suit is a purely legal question.[3]

As his first point on appeal, Kelley argues that he was entitled to statutory immunity as laid out in Arkansas Code Annotated section 21-9-301.[4] According to Kelley, the statute affords a "broad grant of immunity" to him as the Jefferson County Coroner. The statute states in pertinent part:

(a) It is declared to be the public policy of the State of Arkansas that all counties, municipal corporations, school districts, public charter schools, special improvement districts, law enforcement agencies for and certified law enforcement officers employed by a public or private institution of higher education, and all other political subdivisions of the state and any of their boards, commissions, agencies, authorities,

---

[3]*City of Fayetteville v. Romine*, 373 Ark. 318, 284 S.W.3d 10 (2008).

[4](Repl. 2022).

5

or other governing bodies shall be immune from liability and from suit for damages except to the extent that they may be covered by liability insurance.[5]

Kelley contends that the statute makes no distinction between negligence and intentional torts as it relates to immunity. He acknowledges that our supreme court has carved out an exception to this rule; however, he maintains that this contradicts the plain reading of the statute, and to the extent that case law conflicts with the plain reading of the statute, that case law should be overruled.

We have stated that section 21-9-301 "establishes . . . an immunity defense."[6] We have also said that section 21-9-301 provides immunity from civil liability for negligent acts but not for intentional torts.[7] Kelley's argument that our supreme court's case law concerning immunity under section 21-9-301 should be overruled fails because this court cannot overturn supreme court decisions.[8] Additionally, it is well settled that any interpretation of a statute by the supreme court subsequently becomes a part of the statute

---

[5]Ark. Code Ann. § 21-9-301(a).

[6]*W. Memphis Sch. Dist. No. 4 v. Cir. Ct. of Crittenden Cnty.*, 316 Ark. 290, 295, 871 S.W.2d 368, 371 (1994).

[7]*Deitsch v. Tillery*, 309 Ark. 401, 833 S.W.2d 760 (1992).

[8]*Sweeden v. Farmers Ins. Grp.*, 71 Ark. App. 381, 30 S.W.3d 783 (2000).

itself.[9]  The legislature is presumed to be familiar with the interpretation of its statutes, and if it disagrees with those interpretations, it can amend the statutes accordingly.[10]

Alternatively, Kelley contends that the facts in appellees' amended complaint amount to nothing more than negligence claims, and thus, that he is entitled to statutory immunity. He cites cases in which certain torts under certain circumstances have been considered negligence instead of intentional, but he fails to state how the facts alleged in the remaining torts against him (which he fails to even name) amount to negligence and not intentional acts. Based on our reading of the facts to support the remaining tort claims against appellant, we hold that the circuit court did not err in refusing to dismiss those claims based on statutory immunity.

Kelley also argues that he is entitled to qualified/good-faith immunity under the common law. He relies on cases in which there are federal constitutional claims at issue. He contends that common-law qualified immunity protects public officials "from liability in their individual capacity unless they violate a clearly established right of which a reasonable person would know." However, he does not explain how the facts of this case and his actions would fall under the purview of such immunity. We will not address an argument that is not fully developed.[11]

Affirmed.

---

[9]*See Corn v. Farmers Ins. Co.*, 2013 Ark. 444, 430 S.W.3d 655.

[10]*Id.*

[11]*Richards v. Richards*, 2022 Ark. App. 309, 651 S.W.3d 190.

ABRAMSON and KLAPPENBACH, JJ., agree.

*Jason Owens Law Firm, P.A.*, by: *Jason E. Owens*, for appellant.

*Wright, Lindsey & Jennings LLP*, by: *Edwin L Lowther, Jr.*, *Judy Simmons Henry*, *Scott A. Irby*, and *Michael A. Thompson*; *Neely Law Firm*, by: *Efrem B. Neely, Sr.*; and *Quattlebaum, Grooms & Tull, PLLC*, by: *Thomas G. Williams*, for appellees.